UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————X
                                     :

EDWARD J. REYNOLDS, D.D.S., Individually and on    :   Civil Action No.: 7:14-cv-03575-KMK
behalf of all others similarly situated,                             :
                                       :

             Plaintiff,                       :

               vs.                     :   **AMENDED CLASS ACTION**
                                     :   <u>**COMPLAINT AND JURY DEMAND**</u>

LIFEWATCH, INC., LIFEWATCH CORP., LIFEWATCH   :
TECHNOLOGIES CORP., LIFEWATCH SERVICES,   :
INC., LIFEWATCH, INC. d/b/a LIFEWATCH USA,   :
EVAN SIRLIN, MITCHELL MAY, CONNECT   :
AMERICA.COM LLC, KENNETH GROSS, LIFELINE   :
SYSTEMS COMPANY d/b/a PHILIPS LIFELINE, PHILIPS  :
LIFELINE, BRENDA VERE, ABC CORPORATIONS   :
1-10, AND JOHN DOES 1-10,                 :
                                       :

            Defendants.                  :
———————————————————————————X

Plaintiff, EDWARD J. REYNOLDS, D.D.S., by way of this Amended Class Action Complaint against defendants, on behalf of himself and all others similarly situated, alleges upon personal knowledge as to himself, and, as to other matters, upon information and belief, including the investigation of counsel, as follows:

<u>**NATURE OF THE ACTION**</u>

1.     This class action is brought on behalf of all persons in the United States who were contacted by defendants and/or their agents by telephone or otherwise and who paid money to defendants for their medical alert devices and/or monitoring service ("device and/or service"). The class period will be determined. The deceptive business practices of the defendants and/or their agents (hereinafter "defendants") included, among other things, calling plaintiff and other consumers (hereinafter "plaintiff", "class", "class members", or "consumers"), and telling them that a family member, friend, or other person purchased the defendants' medical alert device for them and/or a doctor recommended it for them. Thus,

consumers were told that the device was "free" and that they only had to pay for the monthly monitoring fees, as their family member, friend or other person intended.  The defendants' statements were false, untrue, and/or otherwise misrepresentations.  The defendants subsequently charged consumers for the device and/or a monthly fee for monitoring services. There were also other deceptive practices, misrepresentations, and improper actions relating to the calls and/or sales of the devices.  As a result of the defendants' improper and deceptive acts, the plaintiff and the class have been damaged.

2.      Plaintiff seeks relief, including the following:

(a)     An award of appropriate damages for all members of the class who paid for the device and/or related services.

(b)     Disgorgement from defendants of all monies wrongfully obtained as a result of defendants' improper, unfair, and deceptive business practices and improper acts;

(c)     An injunctive order prohibiting defendants from engaging in the same improper acts in the future based on applicable Consumer Protection Laws and/or other grounds;

(d)     Treble damages, punitive damages, and/or attorney's fees pursuant to the applicable statutes.

(e)     Certification of a class (and/or sub-classes) as described herein or as the Court deems proper and just pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(f)     Designation of plaintiff's counsel as Class Counsel pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(g)     Designation of plaintiff, and/or other class members, as Class Representative(s) pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(h)     An award of attorney's fees to Class Counsel; and

(i)     Such other relief as the Court deems just and proper.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), because this action is between citizens of different states (including members of the class), a class action has been pled, and the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

4.      Venue is proper in this District under 28 U.S.C. § 1391.   The plaintiff, Edward J. Reynolds, D.D.S., resides in this District.  Further, defendants conduct business in New York and in this District, and receive substantial compensation and profits from the sale of their device and/or service in New York and in this District.

5.      This Court has personal jurisdiction over defendants to this action because defendants engage in substantial business in New York, some of the wrongdoing alleged took place in New York, and the defendants' principal place of business is in New York.

## PARTIES

6.      The plaintiff, Edward J. Reynolds, D.D.S., resides in Pearl River, New York, Rockland County.

7.      The defendants, LifeWatch, Inc., LifeWatch Corp., LifeWatch Technologies Corp., LifeWatch Services, Inc., and LifeWatch, Inc. d/b/a LifeWatch, (hereinafter "defendants", or "the LifeWatch entities, or " LifeWatch defendants"), are related corporate entities involved in various aspects of the medical alert device and services business and/or other business.

8.      One or more of the LifeWatch entities is a New York Corporation with its principal place of business in Lynbrook, New York.

9.      Defendant LifeWatch Inc., d/b/a LifeWatch USA, is a New York Corporation with its principal place of business in Lynbrook, New York.

10.      One or more of the LifeWatch entities have offices at 226 Merrick Road, Lynbrook, New York, 11563.

11.     One or more of the LifeWatch entities have offices at 1344 Broadway, Hewlett, New York, 11557.

12.     The LifeWatch defendants use agents and/or representatives to advertise, market and sell their products and/or services in New York and elsewhere.

13.     Defendant Evan Sirlin is the President of one or more of the LifeWatch defendants and controls the company or companies.  Upon information and belief, Mr. Sirlin is a corporate officer and/or director who participates personally in the defendants' business and in the fraudulent conduct, and/or had actual knowledge of it, including the practices in violation of the New York Code, Article 22-A: Consumer Protection From Deceptive Acts and Practices, Sections 349-350 of New York's General Business Law, ("New York Consumer Protection Act"), and/or other applicable statutes and regulations.

14.     Defendant Mitchell May is the Vice President of one or more of the LifeWatch defendants and controls the company or companies.  Upon information and belief, Mr. May is a corporate officer and/or director who participates personally in the defendants' business and in the fraudulent conduct, and/or had actual knowledge of it, including the practices in violation of the New York Code, Article 22-A: Consumer Protection From Deceptive Acts and Practices, Sections 349-350 of New York's General Business Law, ("New York Consumer Protection Act"), and/or other applicable statutes and regulations.

15.     The defendants, Lifeline Systems Company d/b/a Philips Lifeline and Philips Lifeline (hereinafter "defendants", or "the Philips entities", or "Philips defendants"), are related corporate entities involved in various aspects of the medical alert device and services business and/or other business.

16.     One or more of the Philips entities is a Massachusetts Corporation with its principal place of business in Framingham, Massachusetts.

17.     The Philips defendants use agents and/or representatives to advertise, market and sell their products and/or services in New York and elsewhere.

18.     Defendant Brenda Vere is the Director, Consumer Segment of one or more of the Philips defendants and controls the company or companies.  Upon information and belief, Ms. Vere is a corporate

officer and/or director who participates personally in the defendants' business and in the fraudulent conduct, and/or had actual knowledge of it, including the practices in violation of the New York Code, Article 22-A: Consumer Protection From Deceptive Acts and Practices, Sections 349-350 of New York's General Business Law, ("New York Consumer Protection Act"), and/or other applicable statutes and regulations.

19.    The defendants, "Connect America.com LLC", (hereinafter "defendants", or "the Connect America entities", or "Connect America defendants"), are related corporate entities involved in various aspects of the medical alert device and services business and/or other business.

20.    One or more of the Connect America entities is a Pennsylvania Corporation with its principal place of business in Broomall, Pennsylvania.

21.    The Connect America defendants use agents and/or representatives to advertise, market and sell their products and/or services in New York and elsewhere.

22.    Defendant Kenneth Gross is the President of one or more of the Connect America defendants and controls the company or companies.  Upon information and belief, Mr. Gross is a corporate officer and/or director who participates personally in the defendants' business and in the fraudulent conduct, and/or had actual knowledge of it, including the practices in violation of the New York Code, Article 22-A: Consumer Protection From Deceptive Acts and Practices, Sections 349-350 of New York's General Business Law, ("New York Consumer Protection Act"), and/or other applicable statutes and regulations.

23.    The LifeWatch entities and the Philips entities entered into contracts or agreements known as "Insertion Orders" that addressed, among other things, their joint marketing and sales efforts and their agreement to share and/or sell/buy consumers and/or "new subscribers" for their joint profit and gain.

24.    Upon information and belief, the LifeWatch entities and the Philips entities shared a total of 4,258 customer accounts as a result of the customers/new subscribers being obtained through the joint marketing and sales efforts.

25.     The LifeWatch entities and the Connect America entities entered into contracts or agreements known as the "Marketing Alliance Agreement" that addressed, among other things, their joint marketing and sales efforts and their agreement to share and/or sell/buy consumers and/or "customers" for their joint profit and gain.

26.     Upon information and belief, the LifeWatch entities and the Connect America entities shared a total of 30,314 customer accounts as a result of the customers/new subscribers being obtained through the joint marketing and sales efforts.

27.     Defendants, ABC CORPORATIONS (1-10) and JOHN DOES (1-10), are additional actors and/or co-conspirators and/or agents of named defendants, including but not limited to, directors, officers, and employees of defendants, its affiliates, parent or subsidiary corporations or other legal entities, and third party agents of and/or principals of named defendants.  With respect to all allegations in this Complaint, one or more ABC Corporation and/or John Doe defendants participated in, approved, cooperated in, directed, and/or had actual or constructive knowledge of all activities alleged, acted in concert with all or some of the other named and unnamed defendants pursuant to a common design with them, and/or gave substantial assistance or encouragement to other defendants in carrying out the alleged activities.  One or more of the ABC Corporation and/or John Doe defendants profited through false pretense, false representation, improper and/or deceptive business practices, and/or actual fraud, and/or willfully caused injury and/or damage to the Class members.  In addition, one or more ABC Corporation and/or John Doe defendants were involved in developing, designing, implementing, supervising and/or promoting the alleged activities.  Their involvement included, but was not limited to, calling and/or otherwise contacting consumers concerning the defendants' devices and/or services, as described herein.

28.     The defendants and/or their authorized representatives, distributors, and/or agents marketed and sold their products and/or services.  The agents were authorized to act, and did act, as representatives and/or agents of the LifeWatch defendants and/or Sirlin, the Philips defendants and/or Vere, and/or the Connect America defendants and/or Gross.

29.     The defendants exercised sufficient control over their agents' actions, including the telemarketing methods and/or practices, that they can be held responsible for their actions.

30.     The representatives, agents, distributors and/or telemarketers that the defendants contracted with, worked with, and authorized to act on defendants' behalf included Worldwide Information Services, Inc., a Florida Corporation and The Consumer Voice, LLC, a Florida LLC.

31.     The defendants entered into contracts and/or other agreements with their representatives and agents, which authorized them to act as the defendants' agents.

32.     The individual defendants, Evan Sirlin and/or Mitchell May, Brenda Vere, and/or Kenneth Gross have had personal involvement with their respective defendants' corporate business activities and have been involved in the decision-making relating to the improper, deceptive, and/or fraudulent activity involved in this case.

33.     The individual defendants controlled the day-to-day operations of the defendant companies and developed aspects of business activities, such as sales and marketing plans and activities.

34.     Defendants Evan Sirlin and/or Mitchell May, Brenda Vere, and/or Kenneth Gross were aware of, or should have been aware of, the improper business practices and should have taken action to prevent the improper practices and change the company's business practices.

35.     There were numerous consumer complaints and/or lawsuits, which would reasonably be expected to give the defendants, including the individual defendants, notice of the improper and/or deceptive business practices being used to sell the defendants' devices and/or services to consumers.

36.     Based on the elderly age of consumers who would use the defendants' devices and/or services, the consumers who defendants and/or their agents marketed and/or sold to, were senior citizens, who can be more prone to such improper and deceptive practices.

37.     Defendants and/or their agents marketed and sold their products and services to the plaintiff and other class members by sales calls (including use of robo-calls and/or other automated dialing systems and including calls to consumers on "do not call" lists), during which false promises

and/or statements were made, misrepresentations were made, and other deceptive practices and improper acts were taken to make plaintiff and other class members buy defendants' products and/or services. The false promises and/or statements, misrepresentations, and other deceptive acts included telling consumers that a family member, friend, or other person had purchased the defendants' device and/or services for the consumer and that the consumer only needed to continue paying the monthly service fees. Consumers were also told that device was free but in reality they could not receive or use the device without paying for the monthly service fees in the future.

38.     The defendants contacted, or authorized their agents to contact, the plaintiff and other class members and consumers in New York and elsewhere and to engage in improper, deceptive and/or fraudulent business practices, including marketing and sales efforts in violation of the New York Consumer Protection Act.

39.     The defendants provided direction, information, forms, scripts and/or other materials to employees, representatives, and/or agents to be used for the sale of the defendants' products and services and/or approved or allowed the employees, representatives, or agents to use improper sales methods.

40.     The defendants authorized their agents to act on their behalf in the marketing and sale of defendants' products and services.

41.     The defendants authorized their agents to enter into contracts on their behalf and they used the agents to market and sell their products and services.

42.     The defendants and their agents agreed to the aforementioned business arrangements with each other, which led to selling and marketing defendants' products and/or services and which produced sales, all of which benefited the defendants.

43.     Defendants had control over their agents in the selling and marketing of the products and/or services.

44.     The individual defendant, Evan Sirlin has sworn under oath, as CEO of LifeWatch, Inc., on behalf of the company as follows:

1) LifeWatch has "purchase agreements" with "outside sellers", which Sirlin has reviewed recently.

2) LifeWatch has a "list" of the "outside sellers" that it uses for telemarketing sales calls to consumers.

3) LifeWatch does not "monitor" the outside sellers on their list.

4) When LifeWatch purchases customer accounts from outside sellers, LifeWatch becomes immediately and solely responsible for fulfilling the sale and then delivering the products and services to the customers.  And so, there is no need for LifeWatch to reference the outside seller as part of the order, billing, or product delivery processes.

5) LifeWatch maintains that the outside seller list is comprised of a unique combination of sellers, which affords LifeWatch a competitive advantage.

6) LifeWatch's outside seller list was developed after many years of trial and error and research, and after significant money was expended by LifeWatch.

45.     Thus, in Sirlin's Declaration, the LifeWatch defendants have admitted that they fail to monitor their agents who make telemarketing sales calls for the company, which conveniently allows the LifeWatch defendants to receive pecuniary gains and income as a result of their agents (the "outside sellers") improper and/or deceptive business practices.

46.     Defendants' intentional practice of "not monitoring" its agents and their telemarketing practices, even after numerous complaints and lawsuits, among other things, makes them liable for their agents' improper and deceptive business practices.

47.     LifeWatch has stated, in Interrogatory Answers in a separate case, that it "does not engage in telemarketing" but Sirlin refers to LifeWatch's "outside sellers" as telemarketers in an Affidavit submitted in that case and elsewhere.

48.     The defendants' Purchase Agreement with their outside sellers provides that when defendants' outside sellers make a sale of the defendants' products and/or services, the defendants

-9-

principal executive office (which is run by Evan Sirlin, the CEO) reviews the transaction submitted and decides whether to accept or reject it.

49.    Under the aforementioned Purchase Agreement, the defendants pay commissions to the outside sellers, further evidencing that the sellers are the defendants' agents.

50.    The aforementioned Purchase Agreement provides that the defendants will "fulfill" orders for sale of defendants' products that are made to consumers by defendants' agents (i.e., their "outside sellers").

51.    The Purchase Agreement provides that defendants shall "process payments" from consumers for sales by defendants' agents.

52.    The Purchase Agreement provides that defendants and their agents/outside sellers shall determine the prices together, further evidencing the agency relationship.

53.    Under the Purchase Agreement, any notice by defendants' agents to defendants must be directed to the individual defendant, Evan Sirlin.

54.    Before the Purchase Agreement was used as the contract between defendants and their agents, they used a "Marketing Agreement" to memorialize their agreement.

55.    In addition to the Purchase Agreements, defendants have used, or still do use, a "Telemarketing Services Agreement" with their outside sellers/agents, as testified to by Gerardo Duran as an employee of defendants and as proven by other evidence, including the agreements.

56.    Defendants have "conference calls" with their outside sellers/agents, as testified to by Gerardo Duran as an employee of defendants.

57.    Defendants refer to agents of the outside sellers as "sub-agents", as testified to by Gerardo Duran as an employee of defendants.

58.    The money for the initial charge to consumers for defendants' product and/or services goes into the defendants' bank account and the defendants later pay their agents, as testified to by Gerardo Duran as an employee of defendants.

59.     As of February 19, 2014, a LifeWatch defendants' employee, Lauren Vanderwater, was a "call center liaison" and her duties included reviewing recordings of calls between the defendants "outside sellers" and consumers, as testified to by Sarai Baker as an employee of defendants.

60.     Ms. Baker, an employee of the LifeWatch defendants, is the Director of Operations, and she has reviewed sales scripts used by the defendants' agents/outside sellers.

61.     The defendants' outside sellers provide recordings of calls with consumers to defendants for review.

62.     The defendants "randomly request recordings" of calls between outside sellers and consumers and the recordings are reviewed by defendants' employees, including Ms. Vanderwater.

63.     Ms. Vanderwater reports to the Director of Operations if she hears a recording that involves a customer not being treated "in a kind way" by the defendants' "outside sellers".

64.     The defendants randomly listen to recordings of calls between defendants' outside sellers and consumers in order to "make sure that outside call centers are not making misleading statements". (Baker Deposition).

65.     Evan Sirlin and Mitchell May directed Ms. Baker, as an employee of defendants, to give specific instructions and/or direction to outside sellers/call centers concerning their interaction with consumers.  (Baker Deposition)

66.     Baker, as defendants' employee, instructed sales agents in outside call centers to change their sales pitches to consumers they called on defendants' behalf.  (Baker Deposition)

67.     A former employee, Leslie Steinmetz, has stated that defendants, including Mr. Sirlin, were aware of, and closely involved in, the telemarketing efforts of telemarketers for the defendants.

68.     The defendants used authorized sales representatives and/or agents to market and sell their devices and/or services.

69.     The defendants and/or their agents advertise, market, and/or sell through telephone calls to consumers.