# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

EDWARD J. REYNOLDS, D.D.S., Individually and on
behalf of all others similarly situated,

                      Plaintiff,

          vs.

LIFEWATCH, INC., LIFEWATCH CORP., LIFEWATCH
TECHNOLOGIES CORP., LIFEWATCH SERVICES,
INC., LIFEWATCH, INC. d/b/a LIFEWATCH USA,
EVAN SIRLIN, MITCHELL MAY, CONNECT
AMERICA.COM LLC, KENNETH GROSS, LIFELINE
SYSTEMS COMPANY d/b/a PHILIPS LIFELINE, PHILIPS
LIFELINE, BRENDA VERE, ABC CORPORATIONS
1-10, AND JOHN DOES 1-10,

                    Defendants.

: Civil Action No.: 7:14-cv-03575-KMK

: **AMENDED CLASS ACTION**
: **COMPLAINT AND JURY DEMAND**

---------------------------------------------------------------X

       Plaintiff, EDWARD J. REYNOLDS, D.D.S., by way of this Amended Class Action Complaint against defendants, on behalf of himself and all others similarly situated, alleges upon personal knowledge as to himself, and, as to other matters, upon information and belief, including the investigation of counsel, as follows:

<u>**NATURE OF THE ACTION**</u>

      1.     This class action is brought on behalf of all persons in the United States who were contacted by defendants and/or their agents by telephone or otherwise and who paid money to defendants for their medical alert devices and/or monitoring service ("device and/or service"). The class period will be determined. The deceptive business practices of the defendants and/or their agents (hereinafter "defendants") included, among other things, calling plaintiff and other consumers (hereinafter "plaintiff", "class", "class members", or "consumers"), and telling them that a family member, friend, or other person purchased the defendants' medical alert device for them and/or a doctor recommended it for them. Thus,

consumers were told that the device was "free" and that they only had to pay for the monthly monitoring fees, as their family member, friend or other person intended.  The defendants' statements were false, untrue, and/or otherwise misrepresentations.  The defendants subsequently charged consumers for the device and/or a monthly fee for monitoring services.  There were also other deceptive practices, misrepresentations, and improper actions relating to the calls and/or sales of the devices.  As a result of the defendants' improper and deceptive acts, the plaintiff and the class have been damaged.

2.  Plaintiff seeks relief, including the following:

(a)  An award of appropriate damages for all members of the class who paid for the device and/or related services.

(b)  Disgorgement from defendants of all monies wrongfully obtained as a result of defendants' improper, unfair, and deceptive business practices and improper acts;

(c)  An injunctive order prohibiting defendants from engaging in the same improper acts in the future based on applicable Consumer Protection Laws and/or other grounds;

(d)  Treble damages, punitive damages, and/or attorney's fees pursuant to the applicable statutes.

(e)  Certification of a class (and/or sub-classes) as described herein or as the Court deems proper and just pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(f)  Designation of plaintiff's counsel as Class Counsel pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(g)  Designation of plaintiff, and/or other class members, as Class Representative(s) pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(h)  An award of attorney's fees to Class Counsel; and

(i)  Such other relief as the Court deems just and proper.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), because this action is between citizens of different states (including members of the class), a class action has been pled, and the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

4.      Venue is proper in this District under 28 U.S.C. § 1391.   The plaintiff, Edward J. Reynolds, D.D.S., resides in this District.   Further, defendants conduct business in New York and in this District, and receive substantial compensation and profits from the sale of their device and/or service in New York and in this District.

5.      This Court has personal jurisdiction over defendants to this action because defendants engage in substantial business in New York, some of the wrongdoing alleged took place in New York, and the defendants' principal place of business is in New York.

## PARTIES

6.      The plaintiff, Edward J. Reynolds, D.D.S., resides in Pearl River, New York, Rockland County.

7.      The defendants, LifeWatch, Inc., LifeWatch Corp., LifeWatch Technologies Corp., LifeWatch Services, Inc., and LifeWatch, Inc. d/b/a LifeWatch, (hereinafter "defendants", or "the LifeWatch entities, or " LifeWatch defendants"), are related corporate entities involved in various aspects of the medical alert device and services business and/or other business.

8.      One or more of the LifeWatch entities is a New York Corporation with its principal place of business in Lynbrook, New York.

9.      Defendant LifeWatch Inc., d/b/a LifeWatch USA, is a New York Corporation with its principal place of business in Lynbrook, New York.

10.     One or more of the LifeWatch entities have offices at 226 Merrick Road, Lynbrook, New York, 11563.

11.      One or more of the LifeWatch entities have offices at 1344 Broadway, Hewlett, New York, 11557.

12.      The LifeWatch defendants use agents and/or representatives to advertise, market and sell their products and/or services in New York and elsewhere.

13.      Defendant Evan Sirlin is the President of one or more of the LifeWatch defendants and controls the company or companies.  Upon information and belief, Mr. Sirlin is a corporate officer and/or director who participates personally in the defendants' business and in the fraudulent conduct, and/or had actual knowledge of it, including the practices in violation of the New York Code, Article 22-A: Consumer Protection From Deceptive Acts and Practices, Sections 349-350 of New York's General Business Law, ("New York Consumer Protection Act"), and/or other applicable statutes and regulations.

14.      Defendant Mitchell May is the Vice President of one or more of the LifeWatch defendants and controls the company or companies.  Upon information and belief, Mr. May is a corporate officer and/or director who participates personally in the defendants' business and in the fraudulent conduct, and/or had actual knowledge of it, including the practices in violation of the New York Code, Article 22-A: Consumer Protection From Deceptive Acts and Practices, Sections 349-350 of New York's General Business Law, ("New York Consumer Protection Act"), and/or other applicable statutes and regulations.

15.      The defendants, Lifeline Systems Company d/b/a Philips Lifeline and Philips Lifeline (hereinafter "defendants", or "the Philips entities", or "Philips defendants"), are related corporate entities involved in various aspects of the medical alert device and services business and/or other business.

16.      One or more of the Philips entities is a Massachusetts Corporation with its principal place of business in Framingham, Massachusetts.

17.      The Philips defendants use agents and/or representatives to advertise, market and sell their products and/or services in New York and elsewhere.

18.      Defendant Brenda Vere is the Director, Consumer Segment of one or more of the Philips defendants and controls the company or companies.  Upon information and belief, Ms. Vere is a corporate

-4-

officer and/or director who participates personally in the defendants' business and in the fraudulent conduct, and/or had actual knowledge of it, including the practices in violation of the New York Code, Article 22-A: Consumer Protection From Deceptive Acts and Practices, Sections 349-350 of New York's General Business Law, ("New York Consumer Protection Act"), and/or other applicable statutes and regulations.

19.     The defendants, "Connect America.com LLC", (hereinafter "defendants", or "the Connect America entities", or "Connect America defendants"), are related corporate entities involved in various aspects of the medical alert device and services business and/or other business.

20.     One or more of the Connect America entities is a Pennsylvania Corporation with its principal place of business in Broomall, Pennsylvania.

21.     The Connect America defendants use agents and/or representatives to advertise, market and sell their products and/or services in New York and elsewhere.

22.     Defendant Kenneth Gross is the President of one or more of the Connect America defendants and controls the company or companies.   Upon information and belief, Mr. Gross is a corporate officer and/or director who participates personally in the defendants' business and in the fraudulent conduct, and/or had actual knowledge of it, including the practices in violation of the New York Code, Article 22-A: Consumer Protection From Deceptive Acts and Practices, Sections 349-350 of New York's General Business Law, ("New York Consumer Protection Act"), and/or other applicable statutes and regulations.

23.     The LifeWatch entities and the Philips entities entered into contracts or agreements known as "Insertion Orders" that addressed, among other things, their joint marketing and sales efforts and their agreement to share and/or sell/buy consumers and/or "new subscribers" for their joint profit and gain.

24.     Upon information and belief, the LifeWatch entities and the Philips entities shared a total of 4,258 customer accounts as a result of the customers/new subscribers being obtained through the joint marketing and sales efforts.

-5-

25.     The LifeWatch entities and the Connect America entities entered into contracts or agreements known as the "Marketing Alliance Agreement" that addressed, among other things, their joint marketing and sales efforts and their agreement to share and/or sell/buy consumers and/or "customers" for their joint profit and gain.

26.     Upon information and belief, the LifeWatch entities and the Connect America entities shared a total of 30,314 customer accounts as a result of the customers/new subscribers being obtained through the joint marketing and sales efforts.

27.     Defendants, ABC CORPORATIONS (1-10) and JOHN DOES (1-10), are additional actors and/or co-conspirators and/or agents of named defendants, including but not limited to, directors, officers, and employees of defendants, its affiliates, parent or subsidiary corporations or other legal entities, and third party agents of and/or principals of named defendants.   With respect to all allegations in this Complaint, one or more ABC Corporation and/or John Doe defendants participated in, approved, cooperated in, directed, and/or had actual or constructive knowledge of all activities alleged, acted in concert with all or some of the other named and unnamed defendants pursuant to a common design with them, and/or gave substantial assistance or encouragement to other defendants in carrying out the alleged activities.   One or more of the ABC Corporation and/or John Doe defendants profited through false pretense, false representation, improper and/or deceptive business practices, and/or actual fraud, and/or willfully caused injury and/or damage to the Class members.   In addition, one or more ABC Corporation and/or John Doe defendants were involved in developing, designing, implementing, supervising and/or promoting the alleged activities.   Their involvement included, but was not limited to, calling and/or otherwise contacting consumers concerning the defendants' devices and/or services, as described herein.

28.     The defendants and/or their authorized representatives, distributors, and/or agents marketed and sold their products and/or services.   The agents were authorized to act, and did act, as representatives and/or agents of the LifeWatch defendants and/or Sirlin, the Philips defendants and/or Vere, and/or the Connect America defendants and/or Gross.

29.     The defendants exercised sufficient control over their agents' actions, including the telemarketing methods and/or practices, that they can be held responsible for their actions.

30.     The representatives, agents, distributors and/or telemarketers that the defendants contracted with, worked with, and authorized to act on defendants' behalf included Worldwide Information Services, Inc., a Florida Corporation and The Consumer Voice, LLC, a Florida LLC.

31.     The defendants entered into contracts and/or other agreements with their representatives and agents, which authorized them to act as the defendants' agents.

32.     The individual defendants, Evan Sirlin and/or Mitchell May, Brenda Vere, and/or Kenneth Gross have had personal involvement with their respective defendants' corporate business activities and have been involved in the decision-making relating to the improper, deceptive, and/or fraudulent activity involved in this case.

33.     The individual defendants controlled the day-to-day operations of the defendant companies and developed aspects of business activities, such as sales and marketing plans and activities.

34.     Defendants Evan Sirlin and/or Mitchell May, Brenda Vere, and/or Kenneth Gross were aware of, or should have been aware of, the improper business practices and should have taken action to prevent the improper practices and change the company's business practices.

35.     There were numerous consumer complaints and/or lawsuits, which would reasonably be expected to give the defendants, including the individual defendants, notice of the improper and/or deceptive business practices being used to sell the defendants' devices and/or services to consumers.

36.     Based on the elderly age of consumers who would use the defendants' devices and/or services, the consumers who defendants and/or their agents marketed and/or sold to, were senior citizens, who can be more prone to such improper and deceptive practices.

37.     Defendants and/or their agents marketed and sold their products and services to the plaintiff and other class members by sales calls (including use of robo-calls and/or other automated dialing systems and including calls to consumers on "do not call" lists), during which false promises

and/or statements were made, misrepresentations were made, and other deceptive practices and improper acts were taken to make plaintiff and other class members buy defendants' products and/or services. The false promises and/or statements, misrepresentations, and other deceptive acts included telling consumers that a family member, friend, or other person had purchased the defendants' device and/or services for the consumer and that the consumer only needed to continue paying the monthly service fees. Consumers were also told that device was free but in reality they could not receive or use the device without paying for the monthly service fees in the future.

38.     The defendants contacted, or authorized their agents to contact, the plaintiff and other class members and consumers in New York and elsewhere and to engage in improper, deceptive and/or fraudulent business practices, including marketing and sales efforts in violation of the New York Consumer Protection Act.

39.     The defendants provided direction, information, forms, scripts and/or other materials to employees, representatives, and/or agents to be used for the sale of the defendants' products and services and/or approved or allowed the employees, representatives, or agents to use improper sales methods.

40.     The defendants authorized their agents to act on their behalf in the marketing and sale of defendants' products and services.

41.     The defendants authorized their agents to enter into contracts on their behalf and they used the agents to market and sell their products and services.

42.     The defendants and their agents agreed to the aforementioned business arrangements with each other, which led to selling and marketing defendants' products and/or services and which produced sales, all of which benefited the defendants.

43.     Defendants had control over their agents in the selling and marketing of the products and/or services.

44.     The individual defendant, Evan Sirlin has sworn under oath, as CEO of LifeWatch, Inc., on behalf of the company as follows:

1) LifeWatch has "purchase agreements" with "outside sellers", which Sirlin has reviewed recently.

2) LifeWatch has a "list" of the "outside sellers" that it uses for telemarketing sales calls to consumers.

3) LifeWatch does not "monitor" the outside sellers on their list.

4) When LifeWatch purchases customer accounts from outside sellers, LifeWatch becomes immediately and solely responsible for fulfilling the sale and then delivering the products and services to the customers.  And so, there is no need for LifeWatch to reference the outside seller as part of the order, billing, or product delivery processes.

5) LifeWatch maintains that the outside seller list is comprised of a unique combination of sellers, which affords LifeWatch a competitive advantage.

6) LifeWatch's outside seller list was developed after many years of trial and error and research, and after significant money was expended by LifeWatch.

45.    Thus, in Sirlin's Declaration, the LifeWatch defendants have admitted that they fail to monitor their agents who make telemarketing sales calls for the company, which conveniently allows the LifeWatch defendants to receive pecuniary gains and income as a result of their agents (the "outside sellers") improper and/or deceptive business practices.

46.    Defendants' intentional practice of "not monitoring" its agents and their telemarketing practices, even after numerous complaints and lawsuits, among other things, makes them liable for their agents' improper and deceptive business practices.

47.    LifeWatch has stated, in Interrogatory Answers in a separate case, that it "does not engage in telemarketing" but Sirlin refers to LifeWatch's "outside sellers" as telemarketers in an Affidavit submitted in that case and elsewhere.

48.    The defendants' Purchase Agreement with their outside sellers provides that when defendants' outside sellers make a sale of the defendants' products and/or services, the defendants

principal executive office (which is run by Evan Sirlin, the CEO) reviews the transaction submitted and decides whether to accept or reject it.

49.    Under the aforementioned Purchase Agreement, the defendants pay commissions to the outside sellers, further evidencing that the sellers are the defendants' agents.

50.    The aforementioned Purchase Agreement provides that the defendants will "fulfill" orders for sale of defendants' products that are made to consumers by defendants' agents (i.e., their "outside sellers").

51.    The Purchase Agreement provides that defendants shall "process payments" from consumers for sales by defendants' agents.

52.    The Purchase Agreement provides that defendants and their agents/outside sellers shall determine the prices together, further evidencing the agency relationship.

53.    Under the Purchase Agreement, any notice by defendants' agents to defendants must be directed to the individual defendant, Evan Sirlin.

54.    Before the Purchase Agreement was used as the contract between defendants and their agents, they used a "Marketing Agreement" to memorialize their agreement.

55.    In addition to the Purchase Agreements, defendants have used, or still do use, a "Telemarketing Services Agreement" with their outside sellers/agents, as testified to by Gerardo Duran as an employee of defendants and as proven by other evidence, including the agreements.

56.    Defendants have "conference calls" with their outside sellers/agents, as testified to by Gerardo Duran as an employee of defendants.

57.    Defendants refer to agents of the outside sellers as "sub-agents", as testified to by Gerardo Duran as an employee of defendants.

58.    The money for the initial charge to consumers for defendants' product and/or services goes into the defendants' bank account and the defendants later pay their agents, as testified to by Gerardo Duran as an employee of defendants.

59.    As of February 19, 2014, a LifeWatch defendants' employee, Lauren Vanderwater, was a "call center liaison" and her duties included reviewing recordings of calls between the defendants "outside sellers" and consumers, as testified to by Sarai Baker as an employee of defendants.

60.    Ms. Baker, an employee of the LifeWatch defendants, is the Director of Operations, and she has reviewed sales scripts used by the defendants' agents/outside sellers.

61.    The defendants' outside sellers provide recordings of calls with consumers to defendants for review.

62.    The defendants "randomly request recordings" of calls between outside sellers and consumers and the recordings are reviewed by defendants' employees, including Ms. Vanderwater.

63.    Ms. Vanderwater reports to the Director of Operations if she hears a recording that involves a customer not being treated "in a kind way" by the defendants' "outside sellers".

64.    The defendants randomly listen to recordings of calls between defendants' outside sellers and consumers in order to "make sure that outside call centers are not making misleading statements". (Baker Deposition).

65.    Evan Sirlin and Mitchell May directed Ms. Baker, as an employee of defendants, to give specific instructions and/or direction to outside sellers/call centers concerning their interaction with consumers. (Baker Deposition)

66.    Baker, as defendants' employee, instructed sales agents in outside call centers to change their sales pitches to consumers they called on defendants' behalf. (Baker Deposition)

67.    A former employee, Leslie Steinmetz, has stated that defendants, including Mr. Sirlin, were aware of, and closely involved in, the telemarketing efforts of telemarketers for the defendants.

68.    The defendants used authorized sales representatives and/or agents to market and sell their devices and/or services.

69.    The defendants and/or their agents advertise, market, and/or sell through telephone calls to consumers.

70.     The defendants and/or their agents continue to call consumers as part of their marketing and sales activities.

71.     In order to receive the device and/or services, the consumer has to pay the monthly fees.

72.     Defendants tell consumers that they will not be charged until the device is activated but defendants charge consumers immediately, often before activation of the device.

73.     The Philips defendants and the Connect America defendants shared customer accounts with the LifeWatch defendants as a result of their joint marketing and sales efforts and/or scheme, or otherwise acquired them through the Insertion Orders and/or the Marketing Alliance Agreement, and thus are liable for the deceptive practices, misrepresentations, and other improper actions in the marketing and sale of the devices along with the LifeWatch defendants.

74.     The Marketing Alliance Agreement between the LifeWatch defendants and the Connect America defendants provides that LifeWatch customers will purchase Alarm Monitoring Services from Connect America as a result of the joint sales and marketing efforts under the Marketing Alliance Agreement and that Connect America will supply Medical Alarm Equipment to customers who are identified or acquired as a result of the Marketing Alliance Agreement.

75.     The Marketing Alliance Agreement describes in detail the "offer" that will be made to consumers who are called or otherwise contacted as a result of the joint sales and marketing efforts under the Marketing Alliance Agreement, including the equipment and/or services to be offered, the "free" time period to be offered, and/or the "free items" to be offered.

76.     The Insertion Orders between the LifeWatch defendants and the Philips defendants provide that new subscribers, or customers, will be delivered as set forth in the agreement as a result of the joint sales and marketing efforts under the Insertion Orders, which identify the "Marketing Medium" as "call centers".   They further provide that Philips will supply services and/or Medical Alarm Equipment to customers who are identified or acquired as a result of the Insertion Orders.

77.     The Insertion Orders identify LifeWatch as the "Marketer" and provide that Philips has the right to establish terms and conditions of service for subscribers or customers who are called or contacted as a result of the joint sales and marketing efforts under the Insertion Orders.

78.     Defendants regularly and routinely violated the New York Consumer Protection Laws, and/or other applicable statutes and/or regulations by, among other things, advising consumers that they are entitled to a free device, as described in detail in this Complaint, but the consumers must pay the monthly fees.

79.     At all times alleged herein, each and every defendant was an agent, employee, and/or otherwise acting on behalf of all or some of the other defendants. In doing the things alleged herein, each and every defendant was acting within the course and scope of that agency or employment and was acting with the consent, permission and authorization of the remaining defendants.

80.     As a direct result of the defendants' improper, fraudulent and/or deceptive actions, the plaintiff sustained an ascertainable loss as well as other damages including being charged for and paying monthly fees, even though the device was not activated and even though no one had "bought" the device for him as he was told. As a result, the plaintiff seeks relief.

## STATEMENT OF FACTS

81.     The plaintiff received a telephone call from the defendants and/or their agents in July of 2013 advising him that he was entitled to one of the defendants' devices because a family member purchased it for him, however, he was told he had to pay the monthly monitoring fee.

82.     The defendants lured the plaintiff into giving his credit card number for the monthly fees by improperly and/or fraudulently advising him that he was entitled to a free device because a family member purchased it for him. The only reason that the plaintiff paid the monthly fees was because he was told a family member purchased the device for him and wanted him to have the service, which he relied on. Had he not been informed that, he would not have given his card information for monthly fees. The defendants, by their fraudulent and/or improper methods, took advantage of the plaintiff, as well as other

-13-

consumers, and in doing so, violated the New York Consumer Protection Laws and/or other statutes and/or regulations.

83.    The defendants and/or their agents knowingly and willfully contacted the plaintiff and advised him that a family member purchased the defendants' device for him.  In fact, a family member had not purchased a device for plaintiff.    The defendants intended the plaintiff to rely on their misrepresentations.  The plaintiff did, in fact, rely upon the misrepresentations and gave his credit card number to defendants for their monthly fees.

84.    As a direct result of the defendants' improper, fraudulent and/or deceptive practices and actions, the plaintiff sustained an ascertainable loss as well as other damages.  As a result, the plaintiff seeks relief.

85.    Plaintiff was charged $34.95 per month on numerous occasions by defendants, starting on or around July 12, 2013.  The credit card charge reads "Medical Alarms Hewlett, N.Y.".

86.    Plaintiff was charged even though the device that defendants and/or their agents shipped to him was never activated.

87.    The plaintiff continued to be charged by defendants even after the defendants were contacted on plaintiff's behalf and advised that the device/product sent to the plaintiff had not been activated and would not be activated.    The defendants responded by informing plaintiff that the defendants would continue to charge the plaintiff's credit card.

88.    The letter that was enclosed in the box that was sent to the plaintiff indicates that the box includes "instructions on how to connect and use the equipment, responder forms, financial agreement, and our terms and conditions".    Later, the letter refers to the defendants' "terms and conditions". However, the materials referred to, including the financial agreement and the terms and conditions, were not enclosed and were not provided to the plaintiff.

89.    The letter also refers to the defendants "Customer Satisfaction 30 Day Guarantee", but there was nothing provided and no details given.

-14-

90.     Upon information and belief, and based on the investigation, the individual defendants participated in the fraudulent conduct and/or had actual knowledge of it, which makes them personally liable under the Consumer Protection Laws and applicable case law.

91.     Members of the class and/or sub-classes had the same or similar experiences with the defendants as the named plaintiff/class representative did.

92.     Some of the class members' or sub-class members' accounts came under the Marketing Alliance Agreement between the LifeWatch defendants and the Connect America defendants.

93.     Some of the class members' or sub-class members' accounts came under the Insertion Orders between the LifeWatch defendants and the Philips defendants.

## CLASS ACTION ALLEGATIONS

### Class Definition

94.     Plaintiff files this case in his individual capacity and as a class action on behalf of himself and all others similarly situated.   He and/or other class member(s) who will be named as "class representative(s)" at the time a motion is filed to certify the proposed class, will represent the class and/or sub-class, which is composed of all persons in New York and/or in the United States who purchased and/or paid for (in whole or in part), the defendants' medical alert devices and/or monthly services.   The class period will be determined.

95.     In addition, there may be a sub-class of New York residents, Massachusetts residents, Pennsylvania residents, and/or residents of other states.

### Impracticable Joinder

96.     The class is composed of thousands of persons geographically dispersed throughout New York and other parts of the United States, the joinder of whom in one action is impracticable.   The disposition of their claims in a class action will provide substantial benefits to all parties and the Court. The class is sufficiently numerous since there are thousands of consumers in New York and in the United States who come within the class(s).

**Risk of Inconsistent or Varying Adjudications**

97.     Prosecution of separate actions by class members would risk inconsistent or varying adjudications, which would establish incompatible standards of conduct for the defendants.

98.     Adjudications by individual members of the class would, as a practical matter, be potentially dispositive of the interests of other members of the class and substantially impair or impede their ability to protect their interests.  Class-wide adjudication of these claims, therefore, is appropriate.

99.     Class-Wide Injunctive/Declaratory Relief.  Defendants have acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief and/or declaratory relief with respect to the class as a whole appropriate and rendering class-wide adjudication of these claims appropriate.

**Common Questions of Law and Fact**

100.     Class members have a common interest in the questions of law and fact involved in this matter and how they will be decided.   These factual and/or legal questions common to the class predominate over individual factual or legal questions.  The common questions of law and fact include the following:

     (a)     Whether the defendants acted improperly towards the class, including their joint marketing and sales practices;

     (b)     Whether the acts and practices of the defendants violated New York's, Massachusetts', and/or Pennsylvania's Consumer Protection Laws and/or other applicable laws and regulations;

     (c)     Whether defendants, through their misconduct, have been unjustly enriched at the expense of plaintiff and other class members;

     (d)     Whether plaintiff and the class are entitled to damages (including statutory damages) and/or restitution from the defendants; and

     (e)     Whether the class could suffer irreparable harm unless their ongoing obligation to

make monthly payments to defendants is addressed and, what the nature of the equitable and injunctive relief that is necessary to prevent that harm should be.

## Typicality

101.   Class members, among other things, were informed that the defendants' device had been purchased for them, or otherwise provided to them, and that they had to pay monthly fees. As a result, they paid money to defendants for monthly fees. The plaintiff and any other class members who may be named as the class representatives are asserting claims that are typical of the claims of the entire class.

## Fair and Adequate Representation

102.   The class representatives will fairly and adequately represent and protect the interests of the class in that they have no interests that are antagonistic to those of the other members of the class. The plaintiff has retained counsel who is competent and experienced in the handling of litigation, including class action litigation.

## Superiority of Class Action Procedure

103.   The plaintiff and the members of the class have all suffered damages as a result of defendants' improper and deceptive practices. Absent a class action, defendants will likely retain millions of dollars received as a result of defendants' wrongdoing. The improper conduct would go un-remedied and uncorrected. Absent a class action, the class members will not receive restitution. These violations of law will be allowed to stand without remedy and the defendants will retain the proceeds and ill-gotten gains.  Absent a class action, the equitable and injunctive relief sought, will not occur. All of the aforementioned makes class treatment of the issues superior.

104.   Class certification of this matter will be appropriate under Rule 23.

## CLAIMS

105.   Pursuant to notice pleading, plaintiff hereby alleges each and every cause of action and remedy at law or in equity supported by the facts alleged in this Complaint. Those causes of action and remedies at law or in equity include the following:

## COUNT ONE
### VIOLATIONS OF NEW YORK'S GENERAL BUSINESS LAW, SECTIONS 349-350, (CONSUMER PROTECTION LAWS), AND/OR OTHER APPLICABLE STATUTES AND REGULATIONS

106.    Plaintiff repeats and reiterates each and every allegation contained in the paragraphs of this

Complaint marked and designated "1" through "105", inclusive with the same force and effect as though

the same was more fully set forth at length herein.

107.    Section 349 and Section 350 of the New York General Business Law (hereinafter "New

York Consumer Protection Laws") state, in relevant part:

> **New York General Business – Article 22-A - § 349**
> **Deceptive Acts and Practices Unlawful**
>
> General Business
> § 349.  Deceptive acts and practices unlawful.  (a) Deceptive acts or
> practices in the conduct of any business, trade or commerce or in the
> furnishing of any service in this state are hereby declared unlawful.
>
> **New York General Business – Article 22-A - § 350 False**
> **Advertising Unlawful**
>
> § 350.  False advertising unlawful.  False advertising in the conduct
> of any business, trade or commerce or in the furnishing of any
> service in this state is hereby declared unlawful.

108.    Defendants violated the New York Consumer Protection Laws, the Massachusetts

Consumer Protection Laws and/or the Pennsylvania Consumer Protection Laws and/or other applicable

statutes and/or regulations by engaging in the improper and deceptive practices that are described in detail

in this Complaint.

109.    The elements of Section 349 and/or other applicable statutes and/or regulations have been

satisfied.  The improper and deceptive business practices of the defendants and/or their agents were: (1)

consumer-oriented (the plaintiff and the class are consumers); (2) misleading in a material respect (i.e.,

misrepresenting to consumers that a family member or friend purchased a medical device for the

consumer is obviously misleading in a material respect, along with the other deceptive acts and improper

actions); and (3) the plaintiff and the class were injured as a result of the deceptive acts or practices (the

consumers paid money to defendants, causing obvious damages).

110.    The defendants' improper and deceptive business practices are also in violation of Section 350. The defendants' actions, as described in detail in this Complaint, constitute false advertising.

111.    The individual plaintiff and class members were caused to suffer damages as a result of defendants' acts and/or omissions, including ascertainable losses.

## COUNT TWO
## FRAUD/INTENTIONAL MISREPRESENTATION

112.    Plaintiff repeats and reiterates each and every allegation contained in the paragraphs of this Complaint marked and designated "1" through "111", inclusive with the same force and effect as though the same was more fully set forth at length herein.

113.    Defendants knowingly and intentionally made false statements of existing material facts in their contact with plaintiff and class members as described in detail in this Complaint.

114.    The representations, misrepresentations, and/or omissions were likely to mislead a reasonable consumer acting reasonably under the circumstances.

115.    Defendants intended for plaintiff and class members to rely on their material misrepresentations of fact.

116.    Plaintiff and class members reasonably and justifiably relied on defendants' material misrepresentations, unaware of the falsity of defendants' representations, and had a right to rely on those representations.

117.    The individual plaintiff and the class members were caused to suffer damages as a result of defendants' acts and/or omissions.

## COUNT THREE
## EQUITABLE AND INJUNCTIVE RELIEF,
## INCLUDING PURSUANT TO NEW YORK GENERAL BUSINESS LAW, SECTION 349(h),
## AND/OR OTHER APPLICABLE STATUTES AND/OR REGULATIONS

118.    Plaintiff repeats and reiterates each and every allegation contained in the paragraphs of this Complaint marked and designated "1" through "117", inclusive with the same force and effect as though

the same was more fully set forth at length herein.

119.    The class has no complete, speedy, and adequate remedy at law with respect to the fraud, misrepresentations, and/or improper and deceptive business practices by the defendants and/or their agents (as described in detail in this Complaint). The class and others will suffer continuing, immediate, and irreparable injury as a proximate cause of defendants' actions and/or omissions absent injunctive and equitable relief by this Court.  The defendants must be ordered to stop such improper and deceptive business practices in order to prevent future harm, as is authorized in the applicable Consumer Laws.

120.    Section 349 includes a provision about injunctive relief, which provides as follows:

> (h)  In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions.

121.    Thus, plaintiff and class members are specifically authorized under the statute cited, and/or under other applicable statutes and/or regulations, to seek injunctive relief and have the defendants enjoined from continuing their unlawful, improper and deceptive practices.

## COUNT FOUR

## UNJUST ENRICHMENT

122.    Plaintiff repeats and reiterates each and every allegation contained in the paragraphs of this Complaint marked and designated "1" through "121", inclusive with the same force and effect as though the same was more fully set forth at length herein.

123.    The defendants' improper and unlawful activities (as described in detail in this Complaint), including misrepresentations, resulted in the unjust enrichment of the defendants.  The defendants were unjustly enriched in the amount of money made by them through the sale of their products and services.

124.    The class has been damaged in the amount that the defendants were unjustly enriched and/or the amounts they paid and their damage was caused by the defendants' acts and/or omissions.

## PRAYER FOR RELIEF

**WHEREFORE**, as a result of the forgoing, plaintiff on behalf of himself and his individual claims, as well as on behalf of all other persons similarly situated, prays for the following relief:

A. an Order certifying the class, appointing the named plaintiff as class representative, and appointing plaintiff's counsel as class counsel;

B. an Order awarding compensatory damages to plaintiff and all members of the class for all claims in the Complaint;

C. an Order requiring disgorgement of defendants' ill-gotten gains to pay restitution to plaintiff and all members of the class, and to restore to the public all funds acquired by means of any act or practice declared by this Court to be unlawful, fraudulent or unfair business acts or practices, a violation of laws, statutes, or regulations, or constituting unfair competition or false, untrue or misleading advertising;

D. an Order providing for equitable and injunctive relief, including an Order directing defendants to immediately stop their improper and deceptive business practices;

E. treble damages pursuant to the New York Consumer Laws and/or other applicable statutes and/or regulations in connection with defendants' illegal and improper actions;

F. that this Court award attorney's fees and costs of suit to the plaintiff and the Class, including attorney's fees under the New York Consumer Laws and/or other applicable statutes and/or regulations; and

G. such other and further relief as the Court may deem necessary or appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated:  November 13, 2014                    **GAINEY McKENNA & EGLESTON**

_____

Barry J. Gainey (7560)
*Attorney for Plaintiff*
95 Route 17 South, Suite 310
Paramus, New Jersey 07652
T:  (201) 225-9001
F:  (201) 225-9002
E-Mail:  bgainey@gme-law.com
