UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EDWARD J. REYNOLDS, D.D.S.,

                              Plaintiff,

        -v-

LIFEWATCH, INC., et al.,

                              Defendants.

---

Case No. 14-CV-3575 (KMK)

OPINION & ORDER

Appearances:

Barry James Gainey, Esq.
Gainey & McKenna
Paramus, NJ
*Counsel for Plaintiff*

Jason P. Sultzer, Esq.
Littleton Joyce Ughetta Park & Kelly LLP
Purchase, NY
*Counsel for Defendants*

Joseph Lipari, Esq.
The Sultzer Law Group, P.C.
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Charlotte once told Wilbur that "[p]eople are very gullible.  They'll believe anything they

see in print."  According to Plaintiff Edward J. Reynolds, D.D.S. ("Plaintiff"), the same

apparently goes for phone calls.  Plaintiff brings the instant Complaint, on his own behalf and on

behalf of a putative class, alleging that he was the victim of Defendants' deceptive business

practices.  (Am. Compl. ¶ 1 (Dkt. No. 20).)  Plaintiff contends that Defendants falsely

represented to him, and to other members of the putative class, that a "family member, friend, or

other person purchased" a medical alert device on his or her behalf such that the device was free,

save a monthly monitoring fee.  According to Plaintiff, these calls were in violation of New York

General Business Law ("GBL") §§ 349 and 350, the consumer protection laws of New York,

Massachusetts, and Pennsylvania, and common law protections against fraudulent

misrepresentation and unjust enrichment.  (*Id.* ¶¶ 1, 106–24.) Defendants have filed three

separate Motions to Strike Plaintiff's Class Allegations, as well as three Motions To Dismiss

Plaintiff's Second Amended Complaint.  For the following reasons, Defendants' Motions are

granted in part and denied in part.

## I.  Background

### A.  Factual Background

For purposes of the instant Motions, the Court treats the allegations contained in the

Complaint as true.  Lifewatch, Inc. and Lifewatch Technologies Corp. (the "Lifewatch

Defendants") "are related corporate entities involved in various aspects of the medical alert

device and services business" which "use agents and/or representatives to advertise, market[,]

and sell their products and/or services in New York and elsewhere."  (*Id.* ¶¶ 7, 12.)  Defendant

Evan Sirlin ("Sirlin") is the "President," and Defendant Mitchell May ("May") (collectively, the

"Individual Defendants") is "Vice President[,] of one or more of the Lifewatch [D]efendants and

controls the company or companies."  (*Id.* ¶¶ 13–14.)  The Lifewatch Defendants contracted with

Worldwide Information Services, Inc., a Florida Corporation, and The Consumer Voice, LCC, a

Florida LLC, and "authorized them to act as" the Lifewatch Defendants' and Individual

Defendants' "agents."  (*Id.* ¶¶ 30–31.)  Defendants ABC Corporations (1-10) and John Does (1-

10) (the "Unnamed Defendants") are unnamed "additional actors and/or co-conspirators and/or

agents of [the] named [D]efendants."  (*Id.* ¶ 27.)

2

1.  Defendants' Alleged Scheme

Plaintiff alleges that "Defendants and/or their agents marketed and sold" their life medical alert devices to Plaintiffs and other class members by using "sales calls," including robo-calls and other automating dialing systems.  (*Id.* ¶ 37.)  Defendants allegedly told prospective buyers "that a family member, friend, or other person had purchased the . . . device and/or services for" them and that the device was therefore free save a monthly service fee.  (*Id.*)  Defendants also allegedly told "consumers that they will not be charged until the device is activated[,] but [D]efendants charge consumers immediately, often before activation of the device."  (*Id.* ¶ 72.)

According to Plaintiff, the mechanism by which the Lifewatch Defendants marketed their products was via "purchase agreements" with "outside sellers" who engage in telemarketing.  (*Id.* ¶¶ 44, 47 (internal quotation marks omitted).)  The Lifewatch Defendants did not "monitor" these sellers (though they did participate in "conference calls"), but, pursuant to a "Purchase Agreement," the "principal executive office" of the Lifewatch Defendants, run by Sirlin, reviewed and purchased consumer accounts from the sellers.  (*Id.* ¶¶ 44, 48, 56 (internal quotation marks omitted).)  The Purchase Agreement also provides that the Lifewatch Defendants determine prices with their agents but process payments themselves.  (*Id.* ¶¶ 51–52.)[1] In this way, the Lifewatch Defendants become "solely responsible for fulfilling the sale and then delivering the products and services to the customers."  (*Id.* ¶ 44.)[2]

---

[1] Plaintiff also alleges that "any notice by [D]efendants' [A]gents to [D]efendants must be directed to the [I]ndividual [D]efendant, Evan Sirlin," but the Complaint does not make clear what "notice" is.  (Am. Compl. ¶ 53.)

[2] Additionally, pursuant to certain "Insertion Orders" and a "Marketing Alliance Agreement," some consumers purchased services and equipment from Connect America and

In furtherance of their scheme, Plaintiff alleges that Defendants "provided direction, information, forms, scripts[,] and or/other materials[,]" "and/or approved or allowed . . . employees, representatives, or agents to use improper sales methods." (*Id.* ¶ 39; *see also id.* ¶¶ 59–64 (noting how an employee of the Lifewatch Defendants has reviewed sales scripts and recordings of calls between outside sellers and consumers).) More specifically, Plaintiff alleges that the Individual Defendants "participate[d] personally in [Lifewatch] [D]efendants' business and in the fraudulent conduct, and/or had actual knowledge of it," at least in part because of "numerous consumer complaints and/or lawsuits." (*Id.* ¶¶ 13–14, 35.)[3] Plaintiff alleges that the individual Defendants "controlled the day-to-day operations" of the Lifewatch Defendants, including the "decision-making relating to the improper, deceptive, and/or fraudulent activity" at issue, and that they gave, through another employee, "specific instructions and/or direction to outside sellers/call centers concerning their interaction with consumers." (*Id.* ¶¶ 32–33, 65.) Plaintiff likewise alleges that "one or more ABC Corporation and/or John Doe Defendant" "participated in, approved, cooperated in, directed, and/or had actual or constructive knowledge of all activities alleged, acted in concert with all or some of the other named and unnamed [D]efendants pursuant to a common design with them, and/or gave substantial assistance or encouragement to other [D[efendants in carrying out the alleged activities," "profited" and/or "willfully injur[ed]" class members through the unfair business practices alleged, and, together with other agents of the Lifewatch Defendants, "were involved in developing, designing,

---

Philips Lifeline, Defendants who have already been dismissed from this Action. (Am. Compl. ¶¶ 73, 76, 92–93.)

[3] The Amended Complaint does not specify what these complaints were, in what form they were made, or when they were made.

implementing, supervising[,] and/or promoting the alleged activities," all of whom acted with the authorization of the "Life[w]atch [D]efendants and/or Sirlin." (*Id.* ¶¶ 27–28.)[4]

> ### 2.  Plaintiff's Experience

Plaintiff is a resident of Pearl River in Rockland County, NY. (*Id.* ¶ 6.)  He alleges he received a call from Defendants and/or their agents in July 2013 "advising him that he was entitled to one of the [Lifewatch] [D]efendants' devices because a family member purchased it for him," though "he was told he had to pay the monthly monitoring fee." (*Id.* ¶ 81.)  Plaintiff alleges he gave the caller his credit card information, and paid the monthly fees. (*Id.* ¶ 82.)  Plaintiff also alleges he was charged the $34.95 monthly fee "even though the device that [the Lifewatch] [D]efendants and/or their agents shipped to him was never activated." (*Id.* ¶ 86.)  When Defendants "were contacted on [Plaintiff's] behalf" and advised that his device was not activated and would not be activated, Plaintiff contends "[D]efendants responded by informing [P]laintiff that the [D]efendants would continue to charge [P]laintiffs' credit card." (*Id.* ¶ 87.)[5]  Plaintiff also specifically maintains that the Individual Defendants "participated in" this specific instance of "fraudulent conduct and/or had actual knowledge of it." (*Id.* ¶ 90.)  Plaintiff alleges that, as a result, he "sustained an ascertainable loss," namely the $34.95 monthly fee, "as well as other damages." (*Id.* ¶¶ 84–85.)

---

[4] The Court has omitted factual allegations that pertain to Defendants' agreements with others that have already been dismissed from this Action.

[5] Plaintiff also alleges that a letter enclosed with his device indicated that certain documentation, including the financial agreement, a 30-day guarantee, terms and conditions, were included, but that they were not in Plaintiff's device box.  (Am. Compl. ¶¶ 88–89.)

### 3.  Class Allegations

While Plaintiff has not yet moved to certify a class, he alleges that he will represent a class "of all persons in New York and/or the United States who purchased and/or paid for (in whole or in part), the [D]efendants' medical alert devices and/or monthly services," with a class period to be determined, recognizing there may be a need for "a sub-class of New York residents, Massachusetts residents, Pennsylvania residents, and/or residents of other states." (*Id.* ¶¶ 94–95.)  Plaintiff alleges that joinder is impracticable, and that the numerosity requirement is met, because the putative class "is composed of thousands of persons geographically dispersed throughout New York and other parts of the United States," and that "disposition of . . . claims in a class action" is beneficial.  (*Id.* ¶ 96.)  Plaintiff also alleges, in general, that there is a risk of inconsistent or varying adjudication without a class, that adjudication without a class would impair or impede class interests, and that Defendants acted generally towards the class, justifying injunctive or declaratory relief.  (*Id.* ¶¶ 97–99.)  Plaintiff further asserts that his claims are typical of the claims of the class because class members also paid monthly fees due to the same misrepresentations, that he has no interests antagonistic to the class and has retained competent counsel, that, absent a class action, "[D]efendants will likely retain millions of dollars received as a result of [their] wrongdoing" and that class members "will not receive restitution" or "the equitable and injunctive relief sought." (*Id.* ¶ 103.)  Plaintiff also identifies the following common questions of law and fact: whether Defendants' actions were improper, whether the actions violated any state's consumer protection laws, whether Defendants were unjustly enriched, whether Plaintiff and the class are entitled to damages and/or restitution, and whether the class would "suffer irreparable harm unless their ongoing obligation to make monthly

payments to [D]efendants is addressed and, what the nature of the equitable and injunctive relief that is necessary to prevent that harm should be." (*Id.* ¶ 100.)

### B. Procedural History

 Plaintiff filed his initial Complaint on May 19, 2014. (Dkt. No. 1.) At a pre-motion conference held on July 7, 2014, the Court adopted a Scheduling Order for motions to dismiss. (Dkt. No. 10.) On October 8, 2014, Plaintiff informed the Court that, based on limited discovery, Plaintiff intended to amend the Complaint, and that the Parties desired a revised briefing schedule, which the Court granted, (*see* Dkt. No. 14), and which the Court extended on November 11, 2014, (*see* Dkt. No. 18.).

On November 19, 2014, Plaintiff filed an Amended Complaint. (Dkt. No. 20.) In accordance with the revised briefing schedule, the Lifewatch Defendants, Sirlin, and May each filed a Motion To Dismiss and associated memorandum on December 15, 2014. (Dkt. Nos. 28–33.) After these Motions were filed, the Court held another pre-motion conference, (*see* Dkt. (minute entry for Feb. 9, 2015)), establishing a briefing schedule for the remaining Defendants' motions to dismiss, (Dkt. No. 55). While each of those Defendants subsequently filed motions, Plaintiff agreed to stipulations of dismissal for each of those Defendants, leaving only the Lifewatch Defendants, the Individual Defendants, and the Unnamed Defendants. (*See* Dkt. Nos. 71 (Brenda Vere dismissal), 74 (Connect America and Kenneth Gross dismissal), and 76 (Lifeline Systems d/b/a Philips Lifeline dismissal).) In the interim, Plaintiff also filed an Opposition to the Lifewatch Defendants' Motion, and an Opposition addressing the Individual Defendants' Motions, on June 9, 2015, (Dkt. No. 72), in accordance with an extension granted

by the Court, (*see* Dkt. No. 40).[6]  Defendants filed a joint Reply on June 29, 2015.  (Dkt. No. 77.)

## II.  Discussion

### A.  Standard of Review

#### 1.  Motion to Strike Class Allegations

Federal Rule of Civil Procedure 12(f) provides that a court may "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter" sua sponte or "on motion made by a party."  *See also Emilio v. Spring Spectrum L.P.*, 68 F. Supp. 3d 509, 514 (S.D.N.Y. 2014).  Federal Rule of Civil Procedure 23(c)(1)(A) "calls for a determination 'whether to certify the action as a class action' at 'an early practicable time after a person sues . . . as a class representative."  *Emilio*, 68 F. Supp. 3d at 514.  Keeping these rules in mind, to succeed on a motion to strike class allegations, a defendant must "demonstrate from the face of the [c]omplaint that it would be impossible to certify the alleged class regardless of the facts [the] [p]laintiffs may be able to obtain during discovery."  *Mayfield v. Asta Funding*, — F. Supp. 3d —, 2015 WL 1501100, at *6 (S.D.N.Y. 2015); *cf. Calibuso v. Bank of Am. Corp.*, 893 F. Supp. 2d 374, 388 (E.D.N.Y. 2012) ("[T]he court finds that . . . it would be futile to allow [the] plaintiffs to conduct discovery because plaintiff's theory for class certification is simply foreclosed.").

Motions to strike under Rule 12(f) are rarely successful.  *See Belifore v. Procter & Gamble Co.*, — F. Supp. 3d —, 2015 WL 1402313, at *4 (E.D.N.Y. Mar. 25, 2015) ("Courts rarely grant motions to strike pursuant to Federal Rule of Civil Procedure 12(f)."); *Emilio*, 68 F.

---

[6] The main document is Plaintiff's Opposition to the Lifewatch Defendants' Motion; the Opposition to the Individual Defendants' Motions is attached as an exhibit.  (*See* Dkt. No. 72.)

Supp. 3d at 514 ("Motions to strike are viewed with disfavor and infrequently granted." (brackets and internal quotation marks omitted)).  This is particularly true in the class-action context because a Rule 12(f) motion "requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification."  *Belifore*, 2015 WL 1402313, at *4 (internal quotation marks omitted); *see also Emilio*, 68 F. Supp. 3d at 514 (same); *Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395, 410 (S.D.N.Y. 2012) ("[D]istrict courts in this Circuit have frequently found that a determination of whether Rule 23 requirements are met is more properly deferred to the class certification stage, when a more complete factual record can aid the Court in making this determination.").  Put differently, motions to strike class allegations are often denied as premature.  *See, e.g., Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) ("Generally speaking . . . motions [to strike class allegations] are deemed procedurally premature."); *Mazzola*, 849 F. Supp. 2d at 410 (denying motion to strike class allegations as premature); *cf. Pilgrim v. Universal Health Card, LLC,* 660 F.3d 943, 949 (6th Cir. 2011) ("It is only when no amount of discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under Rule 23, that a motion to strike class allegations should be granted.")  An exception to the general rule applies, however, when a motion to strike "addresses issues separate and apart from the issues that will be decided on a class certification motion."  *Chen-Oster*, 877 F. Supp. 2d at 117 (internal quotation marks omitted).

## 2.  Motion To Dismiss

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of

his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citations omitted).  Instead, the Supreme Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563.  A plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. But if a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

For the purposes of Defendants' Motions To Dismiss, the Court is required to consider as true the factual allegations contained in the Complaint.  *See Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) ("We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." (internal quotation marks omitted)); *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008) (same).  "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to

matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).

    B.  <u>Analysis</u>

Plaintiff makes three claims in his Amended Complaint.[7]  First, he alleges violations of New York GBL §§ 349–50.  (Am. Compl. ¶¶ 106–111.)  Second, he alleges that Defendants committed the common law torts of fraud and intentional misrepresentation.  (*Id.* ¶¶ 112–117.) Third, Plaintiff claims that Defendants committed unjust enrichment.  (*Id.* ¶¶ 122–124.)  As relief, Plaintiff seeks class certification, compensatory damages, disgorgement and restitution, "equitable and injunctive relief, including an [o]rder directing [D]efendants to immediately stop their improper and deceptive business practices," treble damages, and attorney's fees and costs. (Am. Compl. 21.)

The Court will address the Motion to Strike Plaintiff's class allegations and then address the merits of Plaintiff's claim.  However, the Court will first address Defendants' Mootness claim which, while included in the motion to strike section of Defendants' Memorandum of Law, (*see* Lifewatch's Mem. of Law in Supp. of its Mot. To Dismiss ("Lifewatch Mem.") 4 (Dkt. No. 29)), must be considered first because it is directed at the Court's jurisdiction over the entirety of the Action, *see Dean v. Blumenthal*, 577 F.3d 60, 64 (2d Cir. 2009) ("We lack jurisdiction if we conclude that a case is moot.").

    1.  Mootness

Defendants argue that the lawsuit is moot because the Lifewatch Defendants have voluntarily initiated a refund campaign.  (Lifewatch Mem. 4.)  A "case is moot when the issues

---

[7] Plaintiff also seeks equitable and injunctive relief in a separate count.  (Am. Compl. ¶¶ 118–121.)

presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496 (1969).  The burden on a defendant "to demonstrate mootness is a heavy one." *Sugarman v. Village of Chester*, 192 F. Supp. 2d 282, 290 (S.D.N.Y. 2002) (internal quotation marks omitted).  "The voluntary cessation of allegedly illegal conduct usually will render a case moot if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Lamar Advert. of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365, 375 (2d Cir. 2004).

"[I]n general, if the claims of the named plaintiffs become moot prior to class certification, the entire action becomes moot." *Comer v. Cisneros*, 37 F.3d 775, 798 (2d Cir. 1994).  However, mootness may be avoided if "an intervenor [has] stepped in," if "class certification . . . relate[s] back to the filing of the complaint," *id.* at 799, where the claims are "'so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires.'"  *Id.* at 799 (quoting *County of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991)).

Attached to their Motion, Defendants attach exhibits indicating that the Lifewatch Defendants have offered to "refund Plaintiff and any and all potential class members across the country for the exact conduct alleged in Plaintiff's Complaint."  (Lifewatch Mem. 4.)  However, this offer is insufficient to justify dismissal on mootness grounds for too many unresolved issues of fact remain.  For example, Defendant's promise of a refund as of yet remains just that; none of Plaintiff's allegations in the Amended Complaint suggests that Plaintiff, or any class members, has received a refund, and there is nothing to suggest Defendants even know whom to compensate or how much each putative class member might claim by way of damages.  And,

even if the Court considered this evidence, (a) the refund campaign has no effect on Plaintiff's claims for declaratory and injunctive relief, *see Leonard v. Abbott Labs.*, No. 10-CV-4676, 2012 WL 764199, at *26 (E.D.N.Y. Mar. 5, 2012) (finding the plaintiff's claims not moot because "the reimbursement offer . . . would not offer the [p]laintiffs the complete remedy they seek"), and (b) as discussed in the next section, the evidence is insufficient to show that the refund campaign is broad enough, or robust enough, to moot Plaintiff's claims or those of the putative class members, *see id.* ("[T]here is no bar preventing [t]he plaintiffs from forgoing compensation through a voluntary refund program in order to pursue their claims in a consumer class action.") Accordingly, there is no basis for dismissing the Amended Complaint on mootness grounds at this time.

<u>2.  Motion to Strike</u>

"In order for a class to be certified, the party seeking certification must comport with the requirements of Federal Rule of Civil Procedure 23."  *Calibuso*, 893 F. Supp. 2d at 386.  The Rule provides that "one or more members of a class may sue or be sued as representative parties on behalf of all members" provided that the following four factors are met:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Further, a party seeking certification must show that the action has one of the following three characteristics:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Federal Rule of Civil Procedure 23(b).  In general, Rule 23 is given a "liberal rather than restrictive construction."  *Duarte v. Tri-State Physical Med. & Rehab., P.C.*, No. 11-CV-37652012 WL 2847741, at *6 (S.D.N.Y. July 11, 2012) (internal quotation marks omitted).

### a.  Superiority

Defendants argue that, because of the aforementioned refund campaign, a class action is not the superior method of adjudicating the putative class members' claims.  As indicated above, under Federal Rule of Civil Procedure 23(b)(3), beyond meeting the initial four criteria for a class action (numerosity, commonality, typicality, and representativeness), a plaintiff seeking

14

class certification must to show, in addition to predominance, that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *See also Johnson*, 780 F.3d at 137 (same).

Even generously construing Defendants' refund campaign, there is insufficient evidence, at this time, to dismiss the superiority of a class action at thus time.  The only evidence Defendants offer in support of the existence of a refund campaign is the Sirlin Affidavit, wherein Sirlin avers that "Lifewatch initiated a recall/refund campaign and advised its customers that they are entitled to a full refund if they were contacted by one of the outside companies and then purchased Lifewatch's products or services based on those allegedly false statements," and that "Plaintiff and any potentially class members were and still are entitled to full redress from Lifewatch's recall/refund campaign," (Lifewatch Mem. Ex. B (Sirlin Aff.) ¶¶ 9–10.)  As Plaintiff notes, it remains unclear how many potential class members have been paid or even contacted as part of the recall campaign, but that discovery will likely close the gaps in the record.  (Pl.'s Mem. of Law in Opp'n to Defs.' Motions to Dismiss Pl.'s Class Action Complaint and to Strike Pl.'s Class Allegations ("Pl.'s Lifewatch Opp'n.") 20–21 (Dkt. No. 72).)

As a result of these and other unanswered questions, this case is distinguishable from the primary case that Defendants cite, *Pagan v. Abbott Labs., Inc.*, 287 F.R.D. 139 (E.D.N.Y. Oct. 20, 2012), wherein the plaintiff had filed a class certification motion, and thus discovery pertaining to that motion had been completed.  *See id.* at 141; *cf. id.* at 151 (citing specific figures from the voluntary recall, namely that "only 4% of the total . . . consumers sought a refund").  Here, the case is in its pre-discovery stage, so the extent to which the refund campaign has fully compensated, or will fully compensate, the putative class members is an open question. Accordingly, given the hesitancy of courts in the Second Circuit to strike class allegations before

a class certification motion is filed, the Court will therefore not strike Plaintiff's class allegations prior to learning more about the nature of the refund campaign at issue. *See Mazzola*, 849 F. Supp. 2d at 410 (denying motion to strike as premature because the motion "depends in part upon the outcome of discovery" and therefore "should await a decision on class certification when the [c]ourt would have the benefit of a full factual record and can better address [the] defendants' arguments").[8]

b.  Representativeness

Next, Defendants claim that "Plaintiff is an inadequate class representative" because bringing suit undermines the refund process, which Defendants contend is "the most efficient and expeditious solution and mechanism." (Lifewatch Mem. 6.) As indicated above, under Federal Rule of Civil Procedure 23(a)(4), Plaintiff must show that, as class representative, that he will "fairly and adequately protect the interests of the class."

Defendants claim that the lawsuit "harms[] the interests of potential class members" because it delays payment and "dilute[s]" the money available to class members. (Lifewatch Mem. 6.) However, as indicated above, it is not clear that the current refund campaign is available to all class members, or that the refund currently being offered is adequate to make them all whole. Further, Plaintiff seeks additional remedies in this suit, including disgorgement

---

[8] Of course, this ruling is without prejudice to oppose Defendants' later opposing Plaintiff's putative class certification motion. Indeed, the "wisdom of the plaintiff's decision to forego" the Refund Program "is questionable, particularly in light of the number of cases that have denied class certification in consumer class actions because a volunteer, recall, and/or refund program provided a superior method of compensating the putative class members." *Leonard*, 2012 WL 764199, at *27; *see also In re Aqua Dots Products Liab. Litig.*, 270 F.R.D. 377, 383–85 (N.D. Ill. 2010) (noting that refund policies can be superior means of compensating consumer victims because class actions "divert a substantial percentage of the refund's value to the class lawyers"). Plaintiff's counsel presumably has discussed this issue with Plaintiff.

16

of profits and declaratory and injunctive relief. (*See* Am. Compl. 21.)  Therefore, and certainly

before discovery is completed, it is not at all clear that Plaintiff, by filing this Action, has harmed

the interests of the class, or is unable to "fairly and adequately" represent their interests.

Accordingly, the Court will not strike the class allegations on this basis.

c.  Ascertainability

Defendants also claim that the class members are not ascertainable because "individual

inquiries" would necessarily predominate over common questions. (Lifewatch Mem. 6–7.)  In

addition to the requirements of Rule 23, "courts have added an 'implied requirement' that the

class be ascertainable." *Ackerman v. Coca-Cola Co.*, No. 09-CV-395, 2013 WL 7044866, at *15

(E.D.N.Y. July 18, 2013).  In other words, "the class must be identifiable such that its members

can be ascertained by reference to objective criteria." *Id.* (internal quotation marks omitted); *see*

*also McBean v. City of New York,* 260 F.R.D. 120, 132–33 (S.D.N.Y. 2009) (noting that to be

ascertainable, the class must be "readily identifiable, such that the court can determine who is in

the class and, thus, bound by the ruling . . . . ).  This standard "is not demanding," and is

"designed only to prevent the certification of a class whose membership is truly indeterminable."

*Gortat v. Capala Bros., Inc.*, No. 07-CV-3629, 2010 WL 1423018, at *2 (E.D.N.Y. Apr. 9,

2010).  Additionally, unlike the criteria contained in Rule 23, ascertainability need not be

determined prior to class certification. *Id.*; *see also Ashe v. Bd. of Elections of N.Y.*, 124 F.R.D.

45, 47 (E.D.N.Y. 1989).

Defendants claim that the class members are not ascertainable because "it [will] be

impossible to ascertain which customers would have opted to receive a free emergency medical

alert device and pay monthly service charges irrespective of whether they had been told that a

friend or family member had already purchased the device." (Lifewatch Mem. 7.)  Defendants

17

also note that the Court would have to make several individual determinations including, but not limited to, "which outside sales company contacted the potential class member[,] the dialogue that occurred during each phone call[,] and whether the potential class member would have paid for the service irrespective of the statements made by the outside company's sales employee." (*Id.*)  The main case that Defendants cite in support is *Vaccariello v. XM Satellite Radio*, 295 F.R.D. 62 (S.D.N.Y. 2013), though the court in that case did not strike class allegations, but rather denied certification, because the plaintiff could not "satisfy Rule 23(b)(3)'s predominance requirement."  *Id.* at 74.  In response Plaintiff only argues (a) that the motion is premature, and (b) that Defendants' argument is "preposterous" because no putative class member could have possibly wanted a medical device.  (Pl.'s Lifewatch Opp'n 22.)

Defendants' argument is certainly not "preposterous."  Rather, it is quite possible that some of the putative class members did not find the misrepresentations material; it may have been the fact that the device was free except for the monitoring fee, and not that it was purportedly purchased by a family member or friend, that caused them to pay the monitoring fee. It is conceivable that ascertaining class members in this case, assuming a class is certified, will be challenging, and the third inquiry that Defendants identified—whether each class member relied on the misrepresentation—is likely the biggest hurdle.  *See Weiner v. Snapple Beverage Corp.*, No. 07-CV-8742, 2010 WL 3119452, at *13 (S.D.N.Y. Aug. 5, 2010) (finding class of "potentially millions" not to be ascertainable because, among other reasons, "putative class members [were] unlikely to remember accurately every Snapple purchase during the class period").  Indeed, as Defendants point out, (*see* Lifewatch Mem. 8), and as the court in *Kottler v. Deutsche Bank AG*, No. 05-CV-7773, 2010 WL 1221809 (S.D.N.Y. Mar. 29, 2010), noted, "fraud claims are unsuited for class action treatment."  *Id.* at *3.

18

The Second Circuit has also made clear, however, that "failure to certify an action . . . on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001), *overruled on other grounds by In re IPO,* 471 F.3d 24 (2d Cir. 2006); *accord Ebin v. Kangadis Food Inc.,* 297 F.R.D. 561, 567 (S.D.N.Y. 2014).  If Defendants' argument was sufficient in this case to strike Plaintiff's class allegations, it would be all but impossible to bring a class action based on fraud allegations, but that conclusion does not line up with the case law.  *See Ebin*, 297 F.R.D. at 567 (granting certification despite "formidable" "ascertainability difficulties" because "the class action device, at its very core, is designed for cases . . . where a large number of consumers have been defrauded," and that adopting the *Snapple* approach would render "class actions against producers almost impossible to bring").  Indeed, in *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008), *abrogated on other grounds by Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639 (2008), *as recognized by Johnson*, 780 F.3d at 138, the Second Circuit made clear that it would not adopt a blanket rule barring fraud-based class actions, noting that "some fraud actions do appear within the contemplation of Rule 23's drafters," namely those where fraud allegations were based on the use of misrepresentations that were similar across class members.  *Id.* at 224–25 (citing Fed. R. Civ. P. 23(b)(3) Advisory Committee Notes ("[A] fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class.")).  Plaintiff alleges the use of similar misrepresentations here.  (*See* Am. Compl. ¶ 37.)  Therefore, the Court will not strike Plaintiff's class allegations at this time, despite the potential difficulty in ascertaining the members of the class.

Moreover, at the very least, "[c]lass discovery will serve to refine the class and the allegations and to aid the [C]ourt in determining whether class certification is appropriate," *Simpson v. Ramada Worldwide, Inc.*, No. 12-CV-5029, 2012 WL 5988644, at *3 (N.D. Cal. Nov. 29, 2012), by making clearer the extent of the burden that ascertaining the class poses, particularly given, at this point, it is not even clear how large the class is.  Accordingly, the Court cannot conclude, on the basis of only the Amended Complaint, that Plaintiffs cannot meet the ascertainability requirement, and therefore the Court will not strike Plaintiff's class allegations.

### d.  Suitability of Class

Defendants also allege that Plaintiff cannot satisfy any of Rule 23's requirements "because Plaintiff's common law claims would break down into innumerable state-specific issues that could not be tried commonly across the class and that would create incurable case management problems."  (Lifewatch Mem. 8.)  In support, Defendants cite *Barrus v. Dick's Sporting Goods, Inc.*, 732 F. Supp. 2d 243 (W.D.N.Y. 2010), which in turn relies on a Fifth Circuit case that held that "'in a class action governed by the laws of multiple states, such as this one, variations in state law may swamp any common issues and defeat predominance.'"  *Id.* at 253–54 (quoting *Cole v. GMC*, 484 F.3d 717, 724 (5th Cir. 2007)).  Defendants also argue that Plaintiff's class allegations to not "predominate over individual issues" because of variances in state law.  (Lifewatch Mem. 9.)  Thus, for example, Defendants argue that "'variations in state law have generally precluded nationwide class certifications based on unjust enrichment theories'" on predominance grounds, (*id.* (quoting *Kottler*, 2010 WL 1221809, at *4)), because

"laws 'concerning unjust enrichment *do* vary from state to state, (*id.* (quoting *Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 142 (S.D.N.Y. 2014)).[9]

In contrast to Defendants' position, courts in the Second Circuit nonetheless have recognized that "[w]hen a class action raises common issues of conduct that would establish liability under a number of states' laws, it is possible for those common issues to predominate and for class certification to be an appropriate mechanism for handling the dispute." *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 79 (E.D.N.Y. 2004) (internal quotation marks omitted); *see also In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363, 377 (S.D.N.Y. 2002) (same).  Indeed, "[t]he spectre of having to apply different substantive law does not warrant refusing to certify a class on . . . common-law claims." *In re LILCO Secs. Litig.*, 111 F.R.D. 663, 670 (E.D.N.Y. 1986).  Moreover, as discussed above, it is once again too early to determine just how intractable the state common law claims will be, and whether those issues can be addressed by the use of subclasses, as Plaintiff suggests, (*see* Pl.'s Lifewatch Opp'n 23), or other case management methods, and whether or not the class claims predominate.  At this point, Plaintiff has only specifically identified three states—New York, Massachusetts, and Pennsylvania—and prior to discovery pertaining to a class certification motion, it is impossible for the Court to determine how many other states' laws are involved.  It is partially for this reason that Defendants do not, and cannot yet, establish that the standards of liability in the states at issue are sufficiently different such that they would raise insurmountable case management issues or render class issues to be insufficiently predominant.  Accordingly, because the variances in state

---

[9] It is worth noting that while the court in *Rodriguez v. It's Just Lunch*, concluded that that the plaintiff's class certification motion related to the unjust enrichment claims should be denied, 300 F.R.D. 125 at 142–143, it nonetheless granted the plaintiff's motion as to other state law claims, including the plaintiff's fraud claims, *id.* at 142–143.

law do not *necessarily* preclude class certification here, and the Court cannot draw that

conclusion simply on the basis of the Amended Complaint, it will not strike Plaintiff's class

allegations at this time.

### e.  Extraterritoriality

Defendants finally argue that Plaintiff's New York GBL claims are unfit for class

certification because they cannot be applied to consumers outside New York State.  (*See*

Lifewatch Mem. 10–11 (citing, inter alia, *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190,

1195 (N.Y. 2002) ("We conclude that the transaction in which the consumer is deceived must

occur in New York.")).)  Indeed, it is insufficient to merely "hatch[] and scheme or originat[e] a

marketing campaign in New York" for the New York GBL to apply.  *Goshen*, 774 N.E.2d at

1195.

While the Court agrees that New York GBL protections only apply to *transactions* that

occur within New York, "a purchaser's citizenship or residency does not affect where a

transaction occurs."  *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir.

2012); *see also Goshen*, 774 N.E.2d at 1196 ("[W]e note that our General Business Law analysis

does not turn on the residency of the parties."); *People ex rel. Spitzer v. Telehublink Corp.*, 756

N.Y.S.2d 285, 289 (App. Div. 2003) (noting that the relevant "statutes, by their terms, do not

limit [a party's] authority to seek relief on behalf of parties injured by conduct in New York

merely because those parties are nonresidents").  While the New York Court of Appeals has

alternatively phrased the requirement as "the deception of a consumer must occur in New York,"

*Goshen*, 774 N.E.2d at 1195, it also has recognized that there is no "per se bar to out-of-state

plaintiffs' claims of deceptive acts leading to transactions within the state," *id.*, and other state

courts have likewise made clear that "nonresident consumers are protected," provided that "at

least some part of the underlying unlawful transaction affecting them [was] completed in the state," *People ex. Rel. Spitzer v. Direct Revenue, LLC*, No. 401325/06, 2008 WL 1849855, at *7 (N.Y. Sup. Ct. Mar. 12, 2008); *see also Telehublink*, 756 N.Y.S.2d at 289 ("Indeed, the interests of New York were implicated when [the defendant] used a New York address to send and receive correspondence related to the telemarketing scheme, including the discount benefits package containing the mischaracterized credit card sent to deceived customers."); *Mountz v. Global Vision Prods.*, 770 N.Y.S.2d 603, 608 (Sup. Ct. 2003) ("[A] telemarketing site and even the receipt of Internet orders physically within New York State appear to form a New York locus for a transaction covered by the New York State Consumer protection statutes . . . ."); *cf. People by Vacco v. Lipsitz*, 663 N.Y.S.2d 468, 474 (Sup. Ct. 1997) (noting that "[i[n some cases" involving Internet consumer fraud, "it might be necessary to analyze the location of certain other business operations, such as the site used or the place the orders were received.").  On the other hand, the Court recognizes that "where the deception is alleged to have affected consumers nationwide, it is not enough to allege merely that the defendant's principal place of business is in New York, or that [the] defendant originated the overall scheme in the state." *Direct Revenue*, 2008 WL 1849855 at *7 (citing *Goshen*, 774 N.E.2d at 1193; *Mayfield v. Gen. Elec. Capital Corp.*, No. 07-CV-2786, 1999 WL 182586, at *10 (S.D.N.Y. Mar. 31, 1999)).

According to the Amended Complaint, only Plaintiff's residence, which is in New York, the principle place of business for the Lifewatch Defendants, which is in New York, and the principle place of business for one the "representatives, agents, distributors, or telemarketers" that Defendants are alleged to have worked with—Worldwide Information Services, Inc., which is in Florida, are clear.  (*See* Am. Compl. ¶¶ 6, 8–11, 30.)  Otherwise, the location of the operations involved in the transactions at issue are unknown, or at least not disclosed in the

Amended Complaint.  Accordingly, the Court is not able to conclude at this stage that, from the

face of the Amended Complaint, that "it would be impossible to certify the alleged class

regardless of the facts" Plaintiff "may be able to obtain during discovery." *Asta Funding*, 2015

WL 150110, at *6. [10]  For the above reasons, Defendants' Motion to Strike Plaintiff's class

allegations is denied.

### 3.  Motion to Dismiss

#### a.  New York General Business Law Claim

Defendants argue that Plaintiff has failed to state a claim under the New York GBL.  The

elements of a GBL § 349 claim are (1) "an act or practice that is" (a) "deceptive or misleading in

a material way" and (b) consumer oriented; and (2) injury "by reason thereof." *Koch v.

Greenberg*, 14 F. Supp. 3d 247, 261 (S.D.N.Y. 2014) (internal quotation marks omitted) (citing

*Galdon v. Guardian Life Ins. Co. of Am.*, 725 N.E.2d 598, 603 (N.Y. 1999)).  "GBL § 350

prohibits false advertising and has the same elements as § 349 . . . ." *Id.*  Defendants contend

that Plaintiff's GBL pleadings are flawed in that they contain no "specific allegations from which

the court can reasonably infer that Plaintiff or other consumers suffered actual, cognizable

harm." (Lifewatch Mem. 13.)  Defendants claim that Plaintiff "makes only conclusory

allegations" with regard to causation and damages, which are insufficient particularly because

"Plaintiff voluntarily produced his credit card number, knew exactly what he was paying for, []

received everything promised to him[,]" and "was not charged for the free unit."  (*Id.* (citing

*Arroyo v. PHH Mortg. Corp.*, No. 13-CV-2335, 2014 WL 2048384, at *11 (E.D.N.Y. May 19,

---

[10] The Court notes, however, that should it turn out that only the transactions of New York class members occurred, at least in part, in New York, the prudent course may well be for the Court to "limit" Plaintiff's GBL claims "to New York class members," as Defendants suggest.  (*See* Lifewatch Mem. 11.)

2014) (noting that "[a]lleging causation" is "essential," and finding "conclusory" allegation that "unfair and deceptive trade acts and practices of [the] [d]efendants . . . directly, foreseeably, and proximately caused damages and injury to [the] [p]laintiffs and consumers at large" to be insufficient to state a claim)).

In response, Plaintiff, in a footnote, lists "15 paragraphs about harm and damages to show the absurdity of the [D]efendants' argument," and also argues that he purchased the Lifewatch device because of the "lies and deceptive practices" outlined in the Amended Complaint, as evidenced by the existence of the "refund campaign" Defendants reference.  (Pl.'s Lifewatch Opp'n 12–14 & n.7.)  While the Court disagrees that each of these 15 paragraphs refers to damages, the Court finds that Plaintiff has alleged enough to plead both causation and damages. For example, in paragraph 83 of the Amended Complaint, Plaintiff alleges that he "did, in fact, rely upon the misrepresentations," misrepresentations that are described elsewhere in the Amended Complaint, when he "gave his credit card number to [D]efendants for their monthly fees," and in paragraph 86, Plaintiff alleges that he was charged "even though the device . . . was never activated."  (Am. Compl. ¶¶ 83, 86.)  Plaintiff also describes the amount of these fees: $34.95 a month starting on or around July 12, 2013.  (*Id.* ¶ 85; *see also id.* ¶ 124 (alleging that damages are the amount paid).)  While the allegations lack precision—Plaintiff for example, does not allege when he stopped being charged the monthly fee, nor does he explain whether he had any interest in obtaining a Lifewatch device separate and apart from the misrepresentation at issue—they are not merely conclusory.  On this point, it bears emphasizing that under New York law, Plaintiff need not even plead that he *reasonably* relied on the misrepresentations; he need only plead an objective misrepresentation that caused the injury at issue.  *See Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 43 (E.D.N.Y. 2008) (noting that "[d]eceptive acts are defined

objectively," and that "the Court of appeals has been clear that a plaintiff *need not show* that s/he *relied* on the misrepresentations in order to have a claim under GBL § 349" (brackets and internal quotation marks omitted) (citing, inter alia, *Stutman v. Chemical Bank*, 731 N.E.2d 608, 612 (N.Y. 2000)).  Defendants' Motion To Dismiss Plaintiff's GBL claims is therefore denied. *See Cereus Prod. Dev., Inc. v. Boom LLC*, No. 14-CV-4292, 2015 WL 3540827, at *6 (S.D.N.Y. June 5, 2015) (denying motion to dismiss where plaintiff claimed that defendants "committed fraud by entering into a contract" under the name of a "fictitious entity," causing "damages in the form of the loss of [the plaintiff's] relationship" with another entity "and 98% of [the] [p]laintiff's yearly revenue").

### b.  Fraud Claim

Defendants also claim that Plaintiff has failed to sufficiently plead fraud under the specificity standard of Federal Rule of Civil Procedure 9(b).  Under this Rule, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," though "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  To satisfy Rule 9(b), a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006); *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (same); *see also Jovel v. i-Health, Inc.*, No. 12-CV-5614, 2013 WL 5437065, at *11 (E.D.N.Y. Sept. 27, 2013) ("Rule 9(b) generally requires that a plaintiff specify the who, what, where, when[,] and why of the alleged fraud; specifying which statements were fraudulent and why, who made the statements to whom, and when and where the statements were made." (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).  "The particularity

requirement of Rule 9(b) is designed to further three goals: (1) to provide a defendant with fair notice of the plaintiff's claim, (2) to protect a defendant from harm to his or her reputation or goodwill, and (3) to reduce the number of strike suits." *Paulino v. Conopco, Inc.*, No. 14-CV-5145, 2015 WL 4895234, at *6 (E.D.N.Y. Aug. 17, 2015).

Rule 9(b) applies broadly to allegations "premised on allegations of fraud," *In re Morgan Stanley Info. Fund. Sec.*, 592 F.3d 347, 358 (2d Cir. 2010); *see also Police & Fire Ret. Sys. of City of Detroit v. Goldman, Sachs & Co*., No. 10-CV-4429, 2014 WL 1257782, at *5 (S.D.N.Y. Mar. 27, 2014), i.e., "to all averments of fraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (internal quotation marks omitted).  The Rule "is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action." *Rombach*, 355 F.3d at 171; *see also Meserole v. Sony Corp. of Am., Inc.*, No. 08-CV-8987, 2009 WL 1403933, at *3 (S.D.N.Y. May 18, 2009) (explaining that Rule 9(b) applies "not only to formal averments of fraud, but also to allegations that sound in fraud, or where the wording and imputations of the complaint are classically associated with fraud" (internal quotation marks omitted)); *Matsumura v. Benihana Nat'l Corp.*, 542 F. Supp. 2d 245, 251 (S.D.N.Y. 2008) (noting that Rule 9(b) applies to "any cause of action that bears a close legal relationship to fraud" and "any non-fraud claim that the plaintiffs have made little, if any, effort to differentiate from the fraud allegations upon which the action is predicated" (internal quotation marks omitted")).  "Whether a complaint complies with . . . Rule [9(b)] . . . depends upon the nature of the case, the complexity or simplicity of the transaction or occurrence, the relationship of the parties[,] and the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading." *United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 616 (S.D.N.Y. 2013) (internal

quotation marks omitted); *see also U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, No. 12-CV-6811, 2013 WL 791462, at *9 (S.D.N.Y. Mar. 5, 2013) ("It is only common sense that the sufficiency of the pleadings under Rule 9(b) may depend upon the nature of the case . . . .")).) For this reason, the Court will consider the circumstances of Plaintiff's case and his relationship to Defendants in determining whether Plaintiff has satisfied the requirements of Rule 9(b).

Defendants claim to identify three Rule 9(b) deficiencies in Plaintiff's Amended Complaint.  First, Defendants argue that Plaintiff "fails to specify the statements that he contends were fraudulent with particularity or explain how, if he received a free device and knowingly authorized monthly service charges related to the device, the statements were actually fraudulent."  (Lifewatch Mem. 14.)  The Court disagrees because Plaintiff, in the Amended Complaint, clearly identifies the allegedly fraudulent statements.  He describes two specific fraudulent statements, both of which were part of the alleged scheme: (1) the statement that a family member or friend purchased the device for the consumer, (*see, e.g.,* Am. Compl. ¶¶ 1, 37, 82), and (2) the statement that the consumer would not be charged a monthly fee until the device was activated, (*see id.* ¶¶ 72, 80).  These allegations, and Plaintiff's alleged reliance on the statements, are sufficient under Rule 9(b).

Second, Defendants argue that "Plaintiff fails to identify the speaker of the fraudulent statements," including "the name of the speaker, who the speaker represented, the phone number of the speaker, etc."  (Lifewatch Mem. 14.)  In the Amended Complaint, Plaintiff alleges that he received a call from "the [D]efendants and/or their agents."  (Am. Compl. ¶ 81.)  While Plaintiff admittedly does not identify the name of the speaker or the specific telephone number that called, neither of which it is realistic to expect Plaintiff to remember, *cf. Odom v. Microsoft Corp.,* 486 F.3d 541, 554 (9th Cir. 2007) ("[I]t is unrealistic to expect that [a] retail customer would

remember the name of [a] cash register employee."), he does clearly identify who the speaker represented—Defendants—and, in the Amended Complaint, Plaintiff details the agency relationships that were behind the call that Plaintiff received.  (*See, e.g.,* Am. Compl. ¶¶ 48–58, 68.)  Accordingly, given the nature of Plaintiff's allegations and the fraudulent conduct alleged, and given Defendants have not suggested that Plaintiff's failure to provide more specifics about the speaker has hampered their defense in any way, Plaintiff has pled the identity of the speaker of the alleged fraudulent statements with sufficient specificity.  *See Odom*, 486 F.3d at 555 (finding that the plaintiffs' allegations satisfied Rule 9(b) because, inter alia, the defendants "provided no reason to believe that [they] [would] be hampered in their defense" by the plaintiffs' "inability to name the particular employees" involved); *Morrison v. Wells Fargo Bank, N.A.*, 30 F. Supp. 3d 449, 457 (E.D. Va. 2014) (finding that the plaintiff's allegations satisfy Rule 9(b) because, while the plaintiff "did not identify the name of the . . . employee with whom he spoke, he identifie[d] the employee as an agent of [the defendant]"); *Stumm v. BAC Home Loans Serv., LP*, 914 F. Supp. 2d 1009, 1013–14 (D. Minn. 2012) ("The failure to provide the name of an employee who made an allegedly fraudulent statement is not necessarily fatal, as long as the complaint pleads sufficient facts to allow the employer readily to identify the employee who spoke to the plaintiff."); *Pagan-Negron v. Wells Fargo, N.A.*, No. 11-CV-398, 2011 WL 10604778, at *6 (W.D. Tex. Sept. 6, 2011) ("Plaintiff does not know the name of the person who made the representation over the phone, but that should not be fatal to her claim.").

Third, Defendants claim that Plaintiff "fails to state where and when the alleged representations were made," namely "the date and time that he received the alleged phone call" and "*where* he received the alleged phone call."  (Lifewatch Mem. 15 (emphasis in original).) Plaintiff alleges that he received the phone call in "July of 2013."  (Am. Compl. ¶ 81.)

Defendants are correct that Plaintiff does not indicate the exact day in July 2013 when he received the call, nor if he received the call at home, on a cell phone, or elsewhere.  Even if Plaintiff could have used phone records to identify the precise date on which he received the call in question, that failure is not dispositive for Rule 9(b) purposes.  *See In re Ramos*, No. 11-BR-2642, 2012 WL 2974900, at *4 (Bankr. N.D. Iowa July 20, 2012) ("[T]he lack of specific dates and content of phone calls will not necessarily cause a pleading to fall short of the Rule 9(b) requirements.").  Rather, the one-month time frame Plaintiff alleges is sufficiently specific for Rule 9(b) purposes.  *See Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC*, 223 F. Supp. 2d 474, 482 (S.D.N.Y. 2002) ("While the Amended Consolidated Complaint does not provide exact dates for the statements, a two-month period is sufficiently circumscribed to satisfy the requirements of Rule 9(b)."), *rejected on other grounds*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 106 (2d Cir. 2007); *Harris v. Wells,* 757 F. Supp. 171, 173 (D. Conn. 1991) ("Generally, a complaint need only apprise a defendant of the 'general time period' of any alleged misstatements to meet the requirements of Rule 9(b)."); *Vereins–Und Westbank AG v. Carter,* 639 F. Supp. 620, 623 (S.D.N.Y. 1986) (finding a two-month period to be sufficiently particular under Rule 9(b)).  The Court also finds that, given the other information that Plaintiff has provided in his Amended Complaint, he did not need to plead the exact location where he received the phone call to satisfy Rule 9(b).  *See Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984) (noting that while "allegations of 'date, place[,] or time'" are sufficient to "place the defendants on notice of the precise misconduct with which they are charged," "nothing in the rules requires them," and "[p]laintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud"); *Greenberger v. Varus Ventures LLC*, No. 13-CV-7920, 2014 WL 6991993, at *10

30

(D.N.J. Dec. 10, 2014) (same); *Franks v. Food Ingredients Int'l, Inc.*, No. 09-CV-3649, 2010 WL 3046416, at *4 (E.D. Pa. July 30, 2010) (same).

As a more general matter, Defendants have sufficient "notice" of Plaintiff's claim such that they can respond and prepare an adequate defense. The marketing scheme, its contents, and its relation to Plaintiff are described in the Amended Complaint, and Defendants, at this stage of the case, do not contest that the misrepresentations at issue were uniformly made to consumers, minimizing the importance of who made the misrepresentations at issue and when. Accordingly, the Court finds that the Amended Complaint meets the pleading standards of Rule 9(b), and Defendants' Motion To Dismiss is denied as to Plaintiff's fraud claim.

### c.  Unjust Enrichment Claim

Defendants also argue that Plaintiff's unjust enrichment claim "is duplicative of his fraud and §§ 349 and 350 causes of action." (Lifewatch Mem. 15.) Courts in the Second Circuit have recognized that "an unjust enrichment claim cannot survive where it simply duplicates, or replaces, a conventional contract or tort claim." *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014). Defendants contend that because Plaintiff's only allegation in support of his unjust enrichment claim is that he "agreed to pay a monthly fee for Lifewatch's device because of Defendants' purported misrepresentations," it is duplicative of his other claims. (Lifewatch Mem. 15–16 (citing Am. Compl. ¶¶ 82–83).)

To state a claim for unjust enrichment under New York law, a Plaintiff must plead that (1) the defendant was enriched; (2) at the expense of the plaintiff; and (3) that it would be inequitable to permit the defendant to retain that which is claimed by Plaintiff. *Koenig*, 995 F. Supp. 2d at 290; *see also Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (noting that "[t]o prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1) that the

defendant benefitted; 2) at the plaintiff's expense; and 3) that equity and good conscience require restitution," and that the "essence of such a claim is that one party has received money or a benefit at the expense of another" (internal quotation marks omitted)).  Plaintiff counters that his claim is not duplicative because certain defenses apply only to the GBL and fraud claims, namely Defendants' claim that "the lies and misrepresentations of [D]efendants and their agents are not actionable because . . . [P]laintiff voluntarily gave his credit card number to . . . [D]efendants," which, if accepted, would leave only Plaintiff's "unjust enrichment claims" to "address the inequities of . . . [D]efendants keeping . . . [P]laintiff's money."  (Pl.'s Lifewatch Opp'n 16–17.)

Defendants have the better of the argument, as is addressed squarely by the case Defendants cite, *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274 (S.D.N.Y. 2014).  In that case, the court dismissed an unjust enrichment claim where the plaintiffs alleged they "purchased Smart Balance because of [the] [d]efendants' purported misrepresentations."  *Id.* at 290.  The court explained that "to the extent that [the] [p]laintiffs' other claims succeed, 'the unjust enrichment claim is duplicative,'" and, importantly, that even "'if [the] plaintiffs' other claims are defective, an unjust enrichment claim [would not] remedy the defects,'" because of the similarity in the underlying allegations.  *Id.* at 291 (quoting *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012)).

The allegations here suffer from the same infirmity.  If Plaintiff's GBL and fraud claims are successful, the unjust enrichment claim is duplicative, as all three claims stem from the same underlying allegation: that Plaintiff paid monthly fees for a Lifewatch device based on on Defendants' misrepresentations.  If Plaintiff's GBL and fraud claims are not successful, the reason for their insufficiency would not be remedied by an unjust enrichment claim.

Accordingly, the Court grants Defendants' Motion To Dismiss Plaintiff's unjust enrichment claim as duplicative.  *See Paulino*, 2015 WL 4895234, at *3–4 (dismissing unjust enrichment claim as duplicative because the court could "conceive of no circumstance in which [the] plaintiffs' breach of warranty claim would fail yet they would still be entitled, in equity and good conscience, to restitution from [the defendant]"); *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.,* 8 F. Supp. 3d 467, 483–84 (S.D.N.Y. 2014) (dismissing an unjust enrichment claim wherein the plaintiff alleged that the defendant misled consumers about its skin-care products, because the unjust enrichment claim "simply restate[d] elements of other claims").

### d.  Piercing the Corporate Veil

In addition to the above arguments, the Individual Defendants also each argue that Plaintiff has failed to allege "facts sufficient to pierce the corporate veil" such that they can be held individually liable.  (Mitchell May's Mem. of Law in Supp. of his Mot. To Dismiss 3 (Dkt. No. 31); Evan Sirlin's Mem. of Law in Supp. of his Mot. To Dismiss 3 (Dkt. No. 31).)[11]

Under New York law, "a court may pierce the corporate veil where 1) the owner exercised complete domination over the corporation with respect to the transaction at issue[,] and 2) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil."  *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp.*, 268 F.3d 58, 63 (2d Cir. 2001).  This standard is "very demanding" such that piercing the corporate veil "is warranted only in extraordinary circumstances, and conclusory allegations of dominance and control will not suffice to defeat a motion to dismiss."  *Capmark Fin. Grp. v. Goldman Sachs Credit Partners L.P.*, 491 B.R. 335, 347 (S.D.N.Y. 2013); *see also EED Holding v. Palmer Johnson Acquisition*

---

[11] Other than the name involved, the "piercing the corporate veil" portions of the May and Sirlin memoranda are identical.  The Court, for efficiency purposes, will therefore only refer to arguments in the May memorandum from this point forward.

*Corp.*, 387 F. Supp. 2d 265, 273 (S.D.N.Y. 2004) ("[I]t is well established that purely conclusory allegations cannot suffice to state a claim based on veil-piercing . . . ."). Veil-piercing analysis is also a

> fact specific inquiry, and courts may consider many factors, including (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity; and (10) intermingling of property between the entities.

*MAG*, 268 F.3d at 63.

Plaintiff does not deny that this demanding standard is proper to determine if veil-piercing is appropriate. Rather, Plaintiff argues that the veil-piercing analysis should not be applied here at all because under New York law, "a corporate officer or director can be held individually liable for fraudulent or illegal acts, including violations of the New York GBL." (Dkt. No. 72 Ex. B (Pl.'s Mem. of Law in Opp'n to Defs.' Mots. To Dismiss) 11.) *See also Asta Funding*, 2015 WL 1501100, at *11 ("A corporate employee or officer who himself participates in a tort, even if it is in the course of his duties, may be held individually responsible." (internal quotation marks omitted)); *Peguero v. 601 Realty Corp.*, 873 N.Y.S.2d 17, 21 (App. Div. 2009) ("[A] corporate officer who participates in the commission of a tort may be held individually liable, regardless of whether the officer aced on behalf of the corporation in the course of official duties and regardless of whether the corporate veil is pierced." (internal quotation marks omitted)); *Lippman Packing Corp. v. Rose*, 120 N.Y.S.2d 461, 465 (Mun. Ct. 1953) ("An officer of a corporation is personally liable for his own fraud and deceit irrespective of whether he committed such for his own personal benefit or for the benefit of a corporation of which he is an

34

officer and/or director.")  Plaintiff also contends that he can seek injunctive relief against the Individual Defendants because they (1) "participated directly in the wrongful acts or practices or . . . had the authority to control the corporate defendants; and (2) . . . had some knowledge of the acts or practices." *F.T.C. v. Five-Star Auto Club, Inc.*, 97 F. Supp. 2d 502, 535 (S.D.N.Y. 2000).

Given these contentions, there are two questions for the Court to consider: (1) has Plaintiff sufficiently alleged the Individual Defendants' participation in the alleged misconduct, and (2) if not, did Plaintiff allege sufficient facts to pierce the corporate veil?  With regard to both questions, the allegations at issue are those in paragraphs 32 through 34 in the Amended Complaint.  In these paragraphs, Plaintiff alleges that the Individual Defendants "had personal involvement with their respective [D]efendants' corporate business activities and have been involved in the decision making relating to the improper, deceptive, and/or fraudulent activity involved in this case," (Am. Compl. ¶ 32), "controlled the day-to-day operations of the [D]efendant companies and developed aspects of business activities, such as sales and marketing plans and activities," (*id.* ¶ 33), and "were aware of, or should have been aware of, the improper business practices and should have taken action to prevent the improper practices and changed the company's business practices," (*id.* ¶ 34).

These allegations are only conclusory and thus are insufficient to establish individual participation.  In cases where courts have found individual defendants to have participated in the misrepresentations at issue, the complaints specifically alleged personal participation, rather than mere awareness or control.  *See Mayfield*, 2015 WL 1501100, at *11 (explaining how the individual defendants themselves made false statements and misrepresentations as part of the alleged fraud scheme); *Davidcraft Corp. v. Danu Int'l, Inc.*, No. 90-CV-6578, 1992 WL 162997, at *6 (S.D.N.Y. June 24, 1992) (holding two individual defendants liable because one committed

"acts of tortious interference and unfair competition" and the other stole the plaintiff's "office equipment and trade secrets"); *W. Indian Sea Is. Cotton Ass'n Inc. v. Threadtex, Inc.*, 761 F. Supp. 1041, 1054 (S.D.N.Y. 1991) (finding that the plaintiff stated a claim against an individual defendant by alleging that the defendant made "misrepresentations" and "participated in the allegedly fraudulent acts of the corporate defendants"); *Nat'l Survival Game, Inc. v. Skirmish, U.S.A., Inc.*, 603 F. Supp. 339, 341 (S.D.N.Y. 1985) (declining to dismiss complaint against individual defendants because the plaintiff alleged that they "personally participated in the wrongful acts"); *Peguero*, 873 N.Y.S.2d at 22 (finding tortious acts where the individual defendant failed to notice a lead paint hazard in an apartment he was responsible for inspecting); *cf. Chloe v. Queen Bee of Beverly Hills, LLC*, No. 06-CV-2140, 2011 WL 3678802, at *4 (S.D.N.Y. Aug. 19, 2011) ("A showing that an officer authorized and approved the acts . . . which are the basis of the corporation's liability is sufficient participation in the wrongful acts to make the officer individually liable." (brackets, alterations, and internal quotation marks omitted)).  Indeed, one of the cases Plaintiff cites, *Peguero v. 601 Realty Corp.*, 873 N.Y.S.2d 17, makes clear that while individual defendants may be held liable for "affirmative tortious act[s]," they cannot be held liable for "a failure to act." *Id.* at 21.  Accordingly, the Individual Defendants' mere knowledge and control of the company's operations is insufficient.

        With regard to piercing the corporate veil, as Plaintiff appears to admit in his Opposition, Plaintiff makes no allegations that either Individual Defendant dominated any of the Lifewatch Defendants such that veil-piercing is appropriate.  Accordingly, the Individual Defendants' Motion To Dismiss Plaintiff's claims against them is granted.

III.  Conclusion

For the foregoing reasons, Defendants' Motions To Dismiss are granted in part and

denied in part.  Defendants' Motions to Strike Plaintiff's Class Allegations are denied.  The

Lifewatch Defendants' Motion is granted, without prejudice, with respect to Plaintiff's unjust

enrichment claim, and denied in all other respects.  The Individual Defendants' Motions are

granted with respect to all claims, without prejudice to amend.  The Court grants Plaintiff thirty

days to file a Second Amended Complaint, addressing the deficiencies outlined in this Order and

Opinion.  The Clerk of the Court is directed to terminate the pending Motions.  (Dkt. Nos. 28,

30, 32.)  The Clerk of the Court is also directed to terminate the Motions that pertain to

Defendants that have been dismissed from the case.  (Dkt. Nos. 61, 68.)

SO ORDERED.

Dated:      September 29, 2015
            White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE